**UNITED STATES of America,
Appellee,**

v.

**Gregory T. TERRY, Appellant.**

**No. 26691.**

United States Court of Appeals,
Ninth Circuit.

July 13, 1971.

---

580

---

J. Frank McCabe (argued), James P. Hagerstrom, San Diego, Cal., for appellant.

Clifton F. White, Asst. U. S. Atty., (argued), Harry D. Steward, U. S. Atty., Robert H. Filsinger, Chief, Crim. Div., Lyn I. Goldbert, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before JERTBERG, DUNIWAY and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was convicted in a jury trial of transportation of marihuana in violation of 21 U.S.C. § 176a. Following conviction, he was committed to the custody of the Attorney General for imprisonment under § 5010(b) of the Youth Corrections Act, 18 U.S.C. § 5005, et seq. He appeals. We affirm.

### FACTS

About 7:50 P.M. on March 15, 1969, co-defendant Lucy Cook, a pedestrian, crossed the Mexican border into the United States at the San Ysidro, California, port of entry. A customs agent observed her pass the inspection station and walk two blocks northward to Oscar's Drive-In. Continuing his surveillance, the agent noticed that she appeared to be looking for someone inside the restaurant or in the drive-in parking lot, which was situated about 800 feet north of the border. After watching Mrs. Cook remain in the lot and look southward toward the entry area for a period of about five minutes, the agent approached her, identified himself and asked her to return to the port of entry for a customs search. This occurred about 8:00 P.M.

At approximately this same time, back at the vehicular inspection lane on the border, another customs agent stopped the appellant, who was driving a white 1957 Ford. The agent testified that the appellant appeared somewhat nervous. When asked to open the trunk, appellant told the agent that he was unable to do so because he had broken the key in the trunk lock. Appellant suggested that the agent could inspect the trunk if the back seat were taken out. This inspection was made, but no contraband was found. The agent did not search the engine compartment of the vehicle at this time. When asked to produce some identification, the appellant stated that he had lost his wallet and wished to return to Mexico. When asked for the automobile registration, appellant said that he was driving a car owned by "Lucy", and handed the agent a registration card showing that the car was owned by Lucy Anglin.[1] The appellant then asked for directions on the way back to Mexico, and was so instructed by the agent, who watched the car head toward the Mexican entry lane until it disappeared from view behind a building.

On the way back to Mexico, according to appellant's testimony, the car's generator light came on, so appellant decided to stay in the United States to find a service station. He stopped the car in the parking lot at Oscar's at 8:10 to 8:15 P.M., and then walked back to the port of entry. There he saw Mrs. Cook seated in the baggage room. The agents observed him watching Mrs. Cook through the glass door, and asked him to enter the office. On appellant's entering the room, Mrs. Cook said, "That is the man I was waiting for." Appellant, who was not yet in custody, denied knowing Mrs. Cook and told the agents that he had not been to Mexico, but had taken a Greyhound bus from San Diego down to San Ysidro. A few minutes later, however, after the agents learned from the other inspector that appellant had passed through the border from Mexico, he changed his story, admitted that he knew Mrs. Cook and said that he

---

1. Mrs. Cook's maiden name.

had driven up from Mexico in a car lent him by Mrs. Cook's husband.

At this point, both appellant and Mrs. Cook were subjected to strip searches. No contraband was found on either person, but a set of car keys was found in the appellant's trousers. Appellant told the officers that the car was parked in Oscar's parking lot. The car, a white 1957 Ford, had license plates identical to those on the Ford which appellant had earlier driven through customs. About 9:00 P.M., one of the agents went to the lot, picked up the car, and returned it to the port of entry. A search was conducted between 9:10 and 9:15 P.M., and two kilos of marihuana were found wrapped in a black shirt concealed in the engine compartment under the hood. The name "Cook" was stamped on the lapel of the shirt. Appellant and Mrs. Cook were then arrested.

Prior to trial, a hearing was held on appellant's motion to suppress the seized narcotic, after which the motion was denied.

### ISSUES

(1) Did the trial court err in denying appellant's motion to suppress because: (a) the search of the car was not a border search, and (b) there was no probable cause for the search and it was thus illegal under the Fourth Amendment; (2) did the trial court commit error in commenting on the evidence?

(1) (a). We are taught by Alexander v. United States, 362 F.2d 379, 382 (9th Cir. 1966), cert. denied 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966), that the test of legality of a border search is " * * * whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States." This test was recently reaffirmed in United States v. Weil, 432 F.2d 1320, 1322 (9th Cir. 1970), the court there recognizing that in *Alexander*, the search was upheld even though there had been a break in surveillance of the vehicle, because it appeared "with reasonable certainty" that the contraband had been in the vehicle when it entered the United States. The court went on to say, however, that a showing that contraband was in the vehicle when it crossed the border was not an indispensible requisite of or condition to a border search.

Taylor v. United States, 352 F.2d 328 (9th Cir. 1965), presents a strong factual parallel to the instant case. There, the defendant drove an automobile through the port of entry at San Ysidro, told the customs officer he wanted to return to Mexico, and was shown the return route. As here, the defendant did not go back to Mexico, but parked his car at Oscar's Drive-In.[2] Shortly thereafter, a woman and child crossed the border on foot into the United States, and the woman was taken to the customs office for a search. The defendant was observed walking toward the office from the American side, and was brought in for questioning. As here, "more highly suspicious circumstances developed", leading the officers to search the car. The search disclosed eight packages of marihuana. Even though the car had not been under surveillance, the court there held the search to be a border search because of the close proximity of the car to the border and the "closeness in time" from the car's entry into the United States to its being searched. *Id.* at 329.

Appellant seeks to distinguish *Taylor* on the ground that the time lapse between the border crossing and the search of the automobile, during which there was no surveillance, was there significantly less than the 45 minute to one hour lapse shown by the present record. While it is not apparent from the opin-

2. From the *Taylor* record.

ion in *Taylor* just how long the time lapse was in that case, our independent search of the *Taylor* record reveals that there the period of time from the border crossing to the search of the vehicle was approximately one hour. We, therefore, hold that *Taylor* is indistinguishable from the case at bar, and that a border search here took place.

Appellant argues that United States v. Selby, 407 F.2d 241 (9th Cir. 1969), requires a finding that the seizure here in question cannot be justified on the basis of a border search. There, the appellees, driving a camper truck, told the customs inspector at the port of entry that they wanted to enter the United States only long enough to have an affidavit notarized. After a cursory search, the camper was cleared. When the camper headed north instead of returning to Mexico, the customs officer became suspicious and ascertained that all the appellees except one were narcotics offenders. Sheriff's deputies stopped the camper some 40 miles north of the border and escorted appellees back to the customs area. A search of the camper revealed marihuana hidden between the door panels. The district court granted the motion to suppress the marihuana on the ground that, since there had been an initial inspection at the border, the second search failed to qualify as a border search not requiring probable cause. This court affirmed the ruling. Appellant feels that this decision controls since there was an initial search of the car he was driving at the border such that the second search was not a border search. Here we think that the second search was also a border search. It was the only search of the engine compartment of the car.

We note that in *Selby*, the camper was originally detained some 40 miles north of the border and was not under surveillance during its northern journey. Here, by contrast, the vehicle had not moved over ⅛th of a mile inside the border before being searched. From appellant's own statements, the officers knew that the vehicle had remained at the parking lot in the immediate vicinity of the border from the time of its crossing.

Other authorities cited by appellant have received our attention. On this record, they are not persuasive. The totality of surrounding circumstances, including the time elapsed and the distance of the vehicle from the border, even conceding the lack of surveillance for the indicated period, are such as to convince us with reasonable certainty that the marihuana which was found in the vehicle at the time of the search was aboard the vehicle at the time of entry into the United States. The chances of a stranger opening the hood of the vehicle in plain sight on an open parking lot and depositing the marihuana in the engine compartment are practically non-existent. On the record before us, *Alexander, Weil* and *Taylor* control.

(1) (b). In view of our conclusions with reference to the legality of the seizure under the border search theory, we need not express ourselves on the government's alternate contention that the officers had probable cause for the search under the Fourth Amendment.

■■ (2) During the course of his instructions, the trial judge called the jury's attention to appellant's testimony that he acquired the marihuana in Mexico, secreted it in the vehicle and brought it across the border. The judge said that, in his opinion, this admission eliminated any issue on those facts. He then immediately reminded the jury that they were the sole and exclusive judges of the facts and that they had a right to disregard appellant's testimony if they so desired. We have uniformly held that an instruction which assumes, as its basis, an admitted or uncontroverted fact is proper and cannot be urged as error. Verdugo v. United States, 402 F.2d 599, 607 (9th Cir. 1968); Lyons v. United States, 325 F.2d 370, 375 (9th Cir. 1963). The remaining comment, of which appellant complains, merely called the jury's attention to appellant's failure to acknowledge his acquaintanceship with Mrs. Cook, when he was first inter-

rogated. Under no stretch of the imagination can this comment be declared judicially impermissible. Again, immediately prior to the remark, the court reminded the jury that they were the sole and exclusive judges of the facts. On this record, the court did not err in commenting on the evidence.

The judgment of conviction is affirmed.