Merrimack
No. 85-336

## DONALD E. BAKER

v.

## MICHAEL J. CUNNINGHAM, WARDEN, THE NEW HAMPSHIRE STATE PRISON

AND

## NEW HAMPSHIRE ADULT PAROLE BOARD

July 29, 1986

*Bamberger & Pfundstein,* of Concord (*JoAnn Samson Bamberger* on the brief and orally), for the plaintiff.

*Stephen E. Merrill,* attorney general (*Ronald F. Rodgers,* senior assistant attorney general, on the brief, and *Stephen Judge,* assistant attorney general, orally), for the defendant Michael J. Cunningham.

SOUTER, J. The Superior Court (*DiClerico,* J.) dismissed the plaintiff's petition for writ of habeas corpus to review the denial of his request for parole from the State prison. We affirm.

On December 18, 1979, the plaintiff was sentenced to seven-and-one-half to fifteen years for attempting to murder his wife. He applied for parole on November 24, 1983, the earliest date of eligibility under the parole statute then in effect. RSA 651:45 (current version at RSA 651-A:6 (Supp. 1983)). On December 16, 1983, the New Hampshire Adult Parole Board denied the request.

The board found that during his incarceration the plaintiff had sent threatening letters that justified concern for the physical and emotional security of the victim and others. The board inferred that for most of the plaintiff's imprisonment he had been either incapable of appreciating the nature of his threats or "genuinely malevolent [and] bent on committing violent crime." Order of State Adult Parole Board (December 16, 1983) (hereinafter cited as 1983 Order). Although the plaintiff had apparently ended the threats, the board could not decide whether he had "had a change of heart or merely a change in tactics." *Id.* Consequently, it concluded that the plaintiff had not satisfied one of the criteria for release on parole, that there be a "reasonable probability" that he "will conduct himself within the law as a good citizen." *Id. See* RSA 651-A:6, I (Supp. 1983).

The board "recommended [that] as a step in establishing this 'reasonable probability' . . . [the plaintiff] be given a thorough psychiatric evaluation by a [disinterested] psychiatrist." The board added that it "is by no means relinquishing its authority in this case. It is simply requesting that this psychiatric evaluation be added to the record to provide expert testimony as to [the plaintiff's] condition and prognosis. The Board will review this evaluation as it becomes available and reschedule [the plaintiff] at such time as it seems appropriate to the Board." 1983 Order.

An independent psychiatrist and two prison psychologists then examined the plaintiff. After receiving their reports favoring parole, the board held a further hearing on October 12, 1984, but, by order dated October 26, 1984, denied parole once again. The board reached four conclusions:

"A. There is substantial risk that Mr. Baker will not conform to the conditions of parole.

B. His release at this time would depreciate the seriousness of his crime or promote disrespect for the law, or lessen its deterrent effect.

C. His release could have an adverse effect on institutional discipline.

D. There is not, at this time, a reasonable probability that Mr. Baker will conduct himself as a good citizen while on parole."

Order of State Adult Parole Board, at 1 (October 26, 1984) (hereinafter cited as 1984 Order).

Although the board did not articulate a basis for conclusions B and C, it addressed conclusions A and D in its further findings. It noted that the victim, and the children of her marriage with the plaintiff, objected to parole, and it found this "opposition . . . important and persuasive . . . [based on the opponents' reasonable] fear of and . . . hostility to [the plaintiff]", 1984 Order, at 2. The board recalled that over the course of some three years of his incarceration the plaintiff had sent the victim written threats to kill her. The board stated that it shared the victim's skepticism about the sincerity of the plaintiff's "conversion" to a benign attitude, and it concluded that the victim was "entitled to have our doubts and misgivings about [the plaintiff] resolved in her favor in this case." *Id.*

The board found the recommendations of the psychiatrist and psychologists unconvincing because "they fail to explain adequately their conclusion that the inmate has changed so as to be a reasonably safe parole risk." 1984 Order, at 2. The board concluded that "it is not unreasonable . . . to insist that [the plaintiff] continue to bear the consequences of [the] Board's present uncertainty as to whether [the plaintiff's] bizarre and criminal behavior really is a thing of the past. The Board does not yet feel reasonably sure that this is the case." *Id.* at 3. The board stated that it would not review the plaintiff's request again for at least one year.

In response, the plaintiff's counsel submitted a long letter to the board requesting an immediate rehearing. When that was denied, counsel filed the present petition for writ of habeas corpus in the superior court.

The plaintiff's petition is long and discursive. Its principal allegations are that the board acted arbitrarily and capriciously, unfairly terminated the October 1984 hearing prematurely, and "reject[ed] the [psychiatric and psychological] evaluation arbitrarily and out-of-

hand" "[d]espite the clear and specific details of the . . . 1983 denial, and the fact that the State had chosen a competent expert to evaluate [the plaintiff]."

The petition also claims that the board failed to follow "statutory mandates or rules . . . or guidelines." The plaintiff specifically charges that the board's refusal to reconsider the matter for a year would "lengthen [the] sentence" and that the board acted illegally both by "requiring" the consent of the victim before it would grant parole, and by demanding proof of more than a reasonable probability that the plaintiff would maintain good behavior if released.

■ The superior court dismissed the petition, finding "that the allegations do not set forth any deprivation of a protected liberty interest that would warrant review by this court" (citing *Brennan v. Cunningham*, 126 N.H. 600, 493 A.2d 1213 (1985) and *Woodman v. Perrin*, 124 N.H. 545, 474 A.2d 999 (1984)). The trial court thus relied on the rule, as stated in the latter case, that "[t]he procedural prerequisite for a court's consideration of a petition for a writ of habeas corpus is an allegation of a present deprivation or a protected liberty interest." *Woodman, supra* at 548, 474 A.2d at 1001 (citation omitted). Our task on appeal, therefore, is to identify the variety of liberty interests that may be invoked on petition for habeas corpus, and to determine whether the plaintiff's pleadings can reasonably be read to claim the actionable denial or infringement of one or more of them.

■■ An individual has a liberty interest, in the broadest sense, in the application of any rule affirmatively recognizing a claim of liberty or in limiting the exercise of a governmental power over the person. Not every such liberty interest lends itself to judicial enforcement or vindication, however, and courts have derived three categories of such interests, the denial or infringement of which may be claimed by a criminal defendant as the basis for relief under a court's jurisdiction to issue writs of habeas corpus. Interests in the first two categories are either constitutional in origin or constitutionally protected; those in the third category are directly enforceable, at least in the courts of New Hampshire, as legal rights.

■■ At the highest level are inherent or constitutional rights to be free. *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979). Below them are rights or expectations to preserve or obtain liberty, or to limit the government's discretion to infringe it, which are created by the law of a given jurisdiction. These include, e.g., the right to retain freedom on parole, *Morrissey v. Brewer*, 408 U.S. 471 (1972), or on probation, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), or

upon deferral of sentence, *Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982); the right to limit conditions of confinement during incarceration to those authorized by the sentence, *Vitek v. Jones*, 445 U.S. 480 (1980); and the right to retain good behavior credits that have a bearing on the ultimate decision to parole or release a prisoner, *Wolff v. McDonnell*, 418 U.S. 539 (1974).

 The hallmarks of these second-level rights or expectations are not only the relative seriousness of their loss, *see Morrissey, supra* at 481, but also their sources in "particularized standards or criteria [guiding governmental] decisionmakers," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981) (Brennan, J., concurring). Such standards must amount to "substantive [legal] limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Only when a second-level liberty interest is so derived can a claim to it be said to rise above the level of a hope, which depends upon an essentially discretionary judgment, *see Greenholtz, supra* at 9–10, to the level of a right, which may be claimed upon proof of a set of facts relevant to satisfy a substantive standard. *Greenholtz supra*; *Dumschat, supra* at 463–64.

Such rights or expectations created by substantive law, like the constitutional or inherent rights in the first category of liberty interests, are subject to procedural due process protection. *See, e.g., Greenholtz, supra* at 12, 16; *Morrissey, supra* at 482; *Stapleford, supra* at 1088, 453 A.2d at 1307. The degree of procedural protection required varies, *compare Morrissey, supra* at 488, *with McDonnell, supra* at 556, and must be determined with reference both to the individual right or expectation in question and to the public interest that justifies a limitation on the right. *See Vitek, supra* at 495; *Wakinekona, supra* at 245–46; *Jago v. Van Curen*, 454 U.S. 14, 18–19 (1981).

 The third level of liberty interests, cognizable in habeas proceedings in the courts of this State, are legal rights that have a bearing on official decisions to grant or to withhold liberty, and which are directly enforceable under State law. *See Woodman*, 124 N.H. at 549, 474 A.2d at 1001–02; *Stone v. Perrin*, 118 N.H. 109, 111, 382 A.2d 1112, 1113 (1978); *Petition of LaForest*, 110 N.H. 508, 510, 272 A.2d 598, 599 (1970); *cf. Wakinekona, supra* at 250–51. An individual thus has a cognizable interest in the legality, as well as in the constitutionally required procedural sufficiency, of the State's action affecting his liberty. *See State ex rel. Thomson v. State Bd. of Parole*, 115 N.H. 414, 421–23, 342 A.2d 634, 638–40 (1975).

When we turn to consider whether the plaintiff has pleaded the infringement of a liberty interest falling within any of these three

categories, it is clear that he does not explicitly invoke any interest at the first or second level. He does, however, claim a denial of procedural due process, which on a generous reading of his pleadings implies a claim that he was denied such a first or second-level liberty interest. And he clearly asserts that the board committed legal errors in basing his eligibility for parole on unauthorized criteria and in denying him an opportunity to appear before the board until the expiration of at least another year.

Before discussing the merits of the due process claims, three observations are in order. First, the pleadings do not explicitly disclose whether the plaintiff raises a federal or a State claim. Since he relied in the trial court on federal cases or State cases applying federal authority, we assume that he rests his claim upon the fourteenth amendment, although we have no reason to believe that a claim based on State authority would produce a different result. Second, we do not accept a general and conclusory allegation of arbitrary and capricious action as an adequate statement of any claim for relief. Third, although our reading of the more specific due process allegations rescues them from complete nullity, they still fall far short of a concise statement of the liberty interest that the plaintiff intends to assert. They are not adequate pleadings, because courts should not be forced to engage in inference, or guesswork, to identify a specific liberty interest that might be thought to have been infringed by an alleged failure to afford procedural due process.

Nonetheless, we do not deal with the due process issues summarily because we are satisifed that by charging due process violations in prematurely terminating the 1984 hearing, and in rejecting the favorable recommendations out of hand, the plaintiff implicitly claims that the board infringed a second-level right or entitlement to parole. It is clear, however, that he has no such right or entitlement.

■ In the absence of some provision grounded in State law mandating a prisoner's release upon proof of certain ascertainable facts, there is no right to parole. *Greenholtz*, 442 U.S. at 9–10; *see Dumschat*, 452 U.S. at 465 (statistical probability does not create entitlement); *Van Curen*, 454 U.S. at 19–20 (mutual understandings of prisoner and parole board that parole had been granted do not rise to level of enforceable expectation). The grant of parole depends to a significant degree upon a prediction about a given applicant's behavior if he is released, and upon a judgment about what will be best for the prisoner and society. As long as the decision rests upon these essentially discretionary determinations, a prisoner's interest

in parole fails to rise above the level of a hope. *Greenholtz*, 442 U.S. at 10.

 Although any State legislature is free to provide that parole is a matter of right rather than a subject of discretion, *Greenholtz*, 442 U.S. at 12, the General Court of this State has not done so. RSA 651-A:6, :7 (Supp. 1983) conditions parole on a judgment that a prisoner will obey the law and observe the terms of parole if he is released. These conditions call for predictive judgments; there is no particular fact that would, if proven, entitle a prisoner to the benefit of such a judgment, and consequently there is no statutory basis to claim an entitlement to parole. A decision to deny parole thus remains qualitatively different from a decision to revoke parole once granted. *Greenholtz*, 442 U.S. at 8–9. While the decision to revoke is characteristically circumscribed by the burden on the government to prove facts amounting to a violation of parole conditions, *see Morrissey*, 408 U.S. at 484, the decision to deny is discretionary. Therefore, though the State may not revoke without procedural due process, *id.*, the decision to deny is not so circumscribed, *Greenholtz*, 442 U.S. at 9–11.

 The plaintiff seeks to avoid this conclusion by suggesting that the board's 1983 order somehow entitled him to release if the independent psychiatric examination resulted in evidence or recommendations favorable to him. However, leaving aside the fact that such an order would not have the force of general law, the order obviously contained no such conditional promise. The board explicitly reserved the discretionary authority that RSA 651-A:6 obligates it to exercise and thus did not even purport to create an entitlement. The trial court correctly concluded, therefore, that the plaintiff had no claim of right or entitlement to parole, which due process guarantees could protect. *See Stone*, 118 N.H. at 111, 382 A.2d at 1113.

It remains for us to consider the plaintiff's claims that the board committed legal errors, which infringed upon a liberty interest of the third category. *See Woodman*, 124 N.H. at 545, 474 A.2d at 999. The plaintiff's conclusory allegation that the board failed to follow applicable statutes, rules and guidelines does not, of course, state a claim for relief. Moreover, the claim that the board's action lengthened the sentence by deferring further consideration, although in form presenting a claim of legal error, is so patently wrong that the trial court properly disregarded it.

Two allegations are left for our consideration. Standing in isolation, the petition raises a colorable claim for relief by alleging that the board illegally required the victim's consent to the plaintiff's parole. The petition did not stand alone, however, for it was accom-

panied by the text of the board's 1984 decision, indicating that the board applied no such requirement. The board stated, rather, that it gave significant weight to the victim's opposition, and that it resolved any doubts about the plaintiff's eligibility for release in the victim's favor, not the plaintiff's. It was not error to consider the victim's opinion, which the victim has a statutory right to express. RSA 651-A:11-a (Supp. 1983). Nor was it error to resolve doubts in the victim's favor, which was a reasonable course to follow in light of the board's findings.

Finally, the plaintiff alleges that the board refused to apply the standard of reasonable probability of parole success, RSA 651-A:6, I (Supp. 1983), and imposed a standard of "reasonable surity [sic] instead." This allegation, too, would have warranted consideration, had it not been accompanied by a copy of the 1984 order, which indicated that the board made no such error. While it is true that the board stated that it did "not yet feel reasonably sure" that the plaintiff's "bizarre and criminal behavior really [was] a thing of the past," to claim that the board thereby imposed a standard higher than reasonable probability is to play a game with words out of context. In the same order the board found that the psychiatric and psychological reports were inadequate to explain the examiners' basis for concluding that the plaintiff would be a "reasonably safe" parole risk, and the board prefaced its entire discussion with a finding that there was no "reasonable probability that [the plaintiff would] conduct himself as a good citizen while on parole." In this context it would be splitting hairs to read the "reasonably sure" language as imposing a legally erroneous standard for exercising discretion to parole. We therefore find that the pleadings and attached materials do not raise a genuine claim of legal error affecting the plaintiff's liberty interest.

The trial court correctly concluded that the plaintiff failed to plead the infringement of any constitutionally protected or statutorily enforceable liberty interest, and it properly dismissed the petition.

*Affirmed.*

All concurred.