Rockingham
No. 85-437

THE STATE OF NEW HAMPSHIRE

v.

KEVIN P. O'LEARY

October 3, 1986

*Stephen E. Merrill*, attorney general (*Andrew L. Isaac*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J. The defendant appeals convictions on three counts of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1983), and one count of kidnapping, RSA 633:1, for which he received three suspended sentences and one committing him to the State prison for three-and-one-half to ten years. He maintains that the Superior Court (*Contas,* J.) erred in refusing to order specific performance of a negotiated plea agreement and in stating to the jury that the defendant had admitted the element of penetration required for proof of each sexual assault charge. We affirm.

The defendant and the female victim had become acquainted prior to January 26, 1984, when they happened to meet at a tavern where the victim worked. After she went off duty, the victim drank with the defendant and later drove him home. The victim accepted the defendant's invitation to go inside the apartment, and once inside they engaged in sexually provocative activity. According to the victim, when she refused to engage in sexual relations, the defendant assaulted her, prevented her from leaving, and forced her to undergo penetration of more than one form. The defendant testified that the victim consented to his acts, but became hysterical when he ejaculated during intercourse.

After the present charges were brought, the public defender entered an appearance for the defendant. With the public defender's approval, however, private counsel also represented the defendant in attempting to negotiate a plea agreement with the county attorney. The record indicates that by early December 1984, the parties were considering an agreement for the entry of guilty pleas in return for prosecutorial recommendations to suspend all but six months of certain sentences to be imposed. The defendant authorized his private counsel to make such an agreement if it proved impossible to bargain for the recommendation of an even shorter period of time to be served.

In fact, a better bargain turned out to be possible, and on December 28, 1984, the then county attorney, Mr. Eldridge, wrote to private counsel to "confirm . . . the offer" to recommend that sentences be suspended for all but four months in return for the entry of pleas of guilty. Private counsel later characterized the letter as confirming a plea agreement to that effect. On January 2, 1985, however, a new county attorney, Mr. Woods, instructed the defendant's private counsel to disregard the prior county attorney's letter of December 28, because it had not been addressed to the defense

counsel of record. Mr. Woods went on to indicate that he would be willing to discuss an agreement for the disposition of the cases.

On January 7, 1985, the defendant signed a letter addressed to his private counsel in which he stated "I accept [the December 28] offer. . . ." By letter of the same date private counsel wrote to Mr. Woods asserting that the December 28 "offer [was] in the nature of a contractual agreement and that [the defendant] has a reasonable time in which to accept it. He does accept the offer . . . subject to his rights in the event the plea negotiations are not accepted by the Court."

Mr. Woods nonetheless persisted in refusing to acknowledge any binding agreement on the terms stated in his predecessor's letter. At length, the defendant moved for enforcement of a plea agreement consisting of the terms set out in Mr. Eldridge's letter, and only when that motion was denied did he proceed to trial on the four indictments.

During trial the defendant took the stand and testified that on the night in question he and the victim had engaged in acts of intercourse, cunnilingus, fellatio and digital penetration. At the close of the trial, the judge instructed the jurors that they were the sole and exclusive judges of the facts, and that sexual penetration was one of the facts that the State must prove as an element of each of the aggravated felonious sexual assault charges. He then added,

> "Now, in this case you are not concerned with that because the defendant on the stand testified that he had sexual penetration, that he did perform cunnilingus, that he did insert his finger in the vagina, so that's one of the elements that has already been admitted to."

Defense counsel excepted to the quoted portion of the charge on the ground that the instruction invaded the province of the jury to find the facts, and that the jury was still entitled to find that there had been no penetration. The judge did not modify the instructions, and this appeal followed.

In support of his first assignment of error, the defendant invokes both the fourteenth amendment of the Constitution of the United States and part I, article 15 of the Constitution of New Hampshire in claiming that the guarantee of due process of law entitles him to specific enforcement of the negotiated plea agreement. We should note as a preliminary matter that we have serious doubts about the evidentiary basis to claim that there was any plea agreement to enforce. The trial court made no finding or ruling bearing on the existence of an agreement, and the documentary record before us does not favor the defendant's position. The Eldridge letter stated

nothing more than an "offer," and neither the defendant nor his counsel purported to accept the offer until five days after Mr. Woods had written to withdraw it. Be this as it may, there is no point in remanding for further evidence and a specific finding, because even on the assumption that there was an agreement, the defendant would not be entitled to its specific enforcement.

There is, first, no merit in the federal due process claim. The defendant, to be sure, places great weight on the reasoning of *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979), which held a negotiated plea agreement enforceable on two grounds: the fifth amendment guarantee of due process and the sixth amendment guarantee of effective assistance of counsel, which the court thought would be jeopardized if defense counsel were unable to make a binding executory plea agreement. But *Cooper* was overruled by *Mabry v. Johnson*, 467 U.S. 504, 507 n.2 (1984), in which the Supreme Court held that

> "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty, . . . ."

*Id.* at 507–08 (footnotes omitted). Due process under the National Constitution, therefore, is no predicate for the enforcement of a wholly executory plea agreement such as the agreement assumed to be in issue here.

It remains to ask whether we should construe due process as guaranteed under part I, article 15 of the State Constitution more favorably to the defendant, or whether indeed we should recognize a basis in substantive State law to enforce the executory plea agreement. We answer no to these questions, for reasons resting on fundamental due process analysis and the internal weakness of the particular arguments the defendant has raised in this case.

Because article 15 guarantees due process for the protection of "life, liberty [and] estate," every demand for due process protection must begin on the most fundamental level by identifying the interest in life, liberty or property that will arguably suffer without the process claimed to be due. *See Baker v. Cunningham*, 128 N.H. 374, 513 A.2d 956 (1986). Thus, in the absence of any indication that a property interest is at stake, the present defendant must first identify a liberty interest that will be affected by the State's withdrawal

from the plea agreement, before he may claim that the guarantee of due process either limits the State's power to withdraw or forbids such withdrawal entirely.

The defendant's claim never gets beyond this threshold requirement, however, because neither an executory plea agreement nor its repudiation is sufficient to affect the defendant's liberty in any way. This is apparent as soon as one recognizes that the agreement itself calls for nothing more than a request or proposal to the trial court to impose a given sentence in response to a plea of guilty; however significant that proposal may be, the trial court is free to reject it. *See State v. Goodrich*, 116 N.H. 477, 479, 363 A.2d 425, 426 (1976); *Santobello v. New York*, 404 U.S. 257, 262 (1971); *Lynch v. Overholser*, 369 U.S. 705, 719 (1962). Thus, as the Supreme Court put it in *Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984), it is the plea of guilty, not the plea agreement, that affects a defendant's liberty. Therefore, whatever might be the nature of an executory plea agreement, it would not give rise to anything more than a hope that the court would accept the prosecutor's recommendation and limit incarceration accordingly. A mere hope, however, whether for favorable sentencing or for some other benefit, does not rise to the level of a constitutionally cognizable liberty interest, *see Baker v. Cunningham supra*, and it follows that a defendant's interest under the agreement on which such a hope depends does not call for due process protection.

This analysis also points to the reason for providing some remedy when a defendant has actually entered a guilty plea in reliance upon a plea agreement that the State fails to honor. When a defendant knowingly and intelligently enters a plea of guilty, he waives a series of constitutional guarantees including the privilege against compulsory self-incrimination and the rights to confront the witnesses against him and to obtain a trial by jury. U.S. CONST. amends. V and VI; N.H. CONST. pt. I, art. 15; *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969); *Brady v. United States*, 397 U.S. 742, 748 (1970). If a defendant waives these federal and State rights and privileges in reliance upon a plea agreement, his waivers are conditioned upon the prosecutor's undertaking to honor the agreement. If the prosecutor thereafter repudiates it, the waivers cannot be enforced as knowing or voluntary. *Mabry v. Johnson, supra* at 509–10; *Santobello v. New York, supra* at 261–62. In order, therefore, to vindicate the constitutional guarantees that a defendant has mistakenly purported to waive, some remedy is required, whether it be withdrawal of the plea or enforcement of the agreement to make the recommendation. *Id.; see also State v. Goodrich, supra* at 479, 363 A.2d at 426. (Indeed,

we leave open the possibility that even before entering a guilty plea a defendant might so rely on such an agreement in taking steps prejudicial to constitutionally protected interests as to justify a claim to some remedy against prosecutorial refusal to abide by the agreement.)

▪▪▪ In sum, the defendant who is a party to a wholly executory plea agreement has no claim to its enforcement on due process grounds because neither the agreement nor its repudiation is sufficient to affect his liberty interest. However, a defendant who has performed his part of a plea agreement has a claim to relief, if not specific enforcement, because a prosecutor's failure to honor his side of the agreement invalidates the defendant's waiver of substantive constitutional rights. The present defendant did not perform his part of the plea agreement by entering guilty pleas, nor did he take any steps which prejudiced his right to a fair trial. He is therefore not entitled to any remedy under the due process clause.

While this disposes of the defendant's due process claim, it would not do justice to his position to view it strictly in due process terms. However much the defendant's arguments may beg the question under the due process clause, they nonetheless address the broader question whether other constitutional or societal interests require enforcement of executory plea agreements like the one before us. We have therefore considered each of the defendant's policy arguments in this wider context. We conclude that none of them can withstand examination.

There is, first, his argument that the practice of plea bargaining itself depends upon a defendant's right to specific enforcement of an executory plea agreement. He contends that if a defendant knows that the prosecutor has the option to withdraw from the agreement, the defendant will not have sufficient inducement to focus on the "moral and strategic considerations" that necessarily underlie his decision to plead guilty. See Ex parte Yarber, 437 So. 2d 1330, 1335 (Ala. 1983). This assertion is at best subject to doubt, however, given the fact that a defendant is never entitled to assume that his plea agreement will be accepted by the court. If a defendant can focus on moral and strategic considerations in the face of this judicial option to reject the agreement, it is not obvious why the prosecutorial option to withdraw will somehow prove more debilitating to the defendant's ability to come to such a focus. It may, indeed, make more sense to suggest that a defendant's knowledge of the prosecutorial option will encourage him to come to grips with a prosecutor's offer promptly, before the prosecutor has second thoughts.

The second argument derives from the overruled opinion of the Fourth Circuit in *Cooper*. There the court reasoned that the constitutional guarantee of effective assistance of counsel requires conditions under which a defendant can develop confidence in his lawyer's practical ability to represent him. Such confidence is said to be undermined when a defendant learns that his lawyer cannot hold a prosecutor to a negotiated plea agreement. This is a far-fetched argument, however. It is hard to see why a prosecutor's withdrawal from an executory plea agreement would shatter a defendant's confidence in his lawyer if the defendant had known from the start that the prosecutor could withdraw. Rather, the only defendant whose confidence is likely to suffer is the defendant who has been misled to believe that repudiation of such an agreement cannot happen. It is also difficult, again, to believe that the effectiveness of counsel's representation is any more vulnerable to a prosecutor's option to withdraw from an agreement than it is to a court's option to reject it. In either case, the effectiveness of counsel can only be measured against the legal limits of representation.

Finally, there is the argument, also articulated in *Cooper*, that it would be fundamentally unfair to allow the prosecutor to withdraw from such an agreement. Indeed, in *Cooper*, this unfairness was said to raise an issue of substantive due process under the fifth amendment, a suggestion that *Mabry* squarely repudiates. Even on a nonconstitutional level of analysis, however, the claim of fundamental unfairness fails the moment that one considers the defendant's own option to repudiate an executory plea agreement.

Because it is axiomatic that a guilty plea must be a voluntary act, *Boykin v. Alabama*, 395 U.S. at 242–43, a defendant is always free to refuse to plead. He may have entered into a negotiated plea agreement with all conceivable deliberation, intelligence and solemnity, but until the judge has accepted the guilty plea the defendant is free to render his solemn plea agreement an inconsequential nullity and demand his trial. Since the defendant has this unfettered power to repudiate an executory plea agreement, there is no unfairness, fundamental or otherwise, in recognizing that the prosecutor has the same power. We do not, of course, suggest that the repudiation of plea agreements should be a matter of indifference to prosecutors, but we cannot see how the existence of such a power, or its exercise in this instance, presents a justiciable issue.

■ Thus, the trial court correctly refused to enforce the executory plea agreement alleged, and we proceed to consider the defendant's second assignment of error, attacking the portion of the jury instructions quoted earlier in this opinion. The defendant maintains

that the court invaded the province of the jury, as the exclusive finder of fact, *see State v. Jones*, 125 N.H. 490, 494, 484 A.2d 1070, 1073 (1984), when it explained that the jury need not be concerned with proof of penetration as an element of the aggravated felonious sexual assault charges, because the defendant had admitted that element as alleged in each count of the indictment. We believe there is neither State nor federal support for the two arguments that the defendant advances.

■ The first argument may be dealt with shortly. The defendant contends that the instruction deprived him of the jury's unreviewable power to nullify the law, by removing from their consideration an issue upon which their nullification power might have operated. *See State v. Mayo*, 125 N.H. 200, 480 A.2d 85 (1984). Without turning this into an occasion for a detailed analysis of the nullification concept, it is sufficient to say that the jury was just as free to disregard the portion of the instruction challenged here as it was to disregard any other part of the charge. If in fact the jury was less likely to do so, that is more probably because of the defendant's position at trial than because of the court's statement in the charge.

The second argument tries to draw an analogy between the trial court's statement that the defendant had admitted an element and the instruction found unconstitutional in *Sandstrom v. Montana*, 442 U.S. 510 (1979). In *Sandstrom* the Supreme Court held that an instruction either creating a conclusive presumption of criminal intent, or shifting the burden of persuasion on that element, violated the due process requirement that the State prove every element of a criminal charge beyond a reasonable doubt. *Sandstrom v. Montana, supra* at 521 (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

The *Sandstrom* analogy is flawed, however, because the facts in *Sandstrom* stand in stark contrast to the facts before us. The burden-satisfying or burden-shifting instruction disapproved in *Sandstrom* relieved the prosecution of the burden to prove the very element that the defendant specifically contested, whereas the defendant in this case took the stand and admitted the acts of penetration to which the instruction referred. He admitted intercourse, cunnilingus, and fellatio, and he responded to a question on cross-examination in a way that could only have been understood as an admission of digital penetration. Most significantly, he rested his entire defense on these admissions, since his theory of defense was the victim's consent to his admitted acts.

*Sandstrom* therefore is not in point; neither is *DeCecco v. United States*, 338 F.2d 797 (1st Cir. 1964), upon which the defendant also seeks to rely. In *DeCecco*, the defendant presented some evidence,

but failed to offer any on one particular element, which the trial court later instructed the jury was uncontested. The court of appeals reversed, reasoning that a defendant who presents evidence on one element does not thereby relieve the government of its burden to prove another. Again the contrast with the present case is clear; the trial court here did not refer to uncontested issues, but to elements subject to express admissions offered in support of a specific theory of defense.

The contrasts with *Sandstrom* and *DeCecco* do indicate, however, why the question before us should be seen as a narrow one: when a defendant has taken the stand, has admitted an element of the charge against him, and maintains that admission throughout the trial, does it violate his right to jury trial under the sixth amendment or under part I, article 15 of the State Constitution if the trial judge instructs the jury that the defendant has made the admission and that they need not consider that element? We believe the answer must be no under each constitutional provision.

On the federal issue the State has cited several cases exemplified by *United States v. Terry*, 446 F.2d 579 (9th Cir.), *cert. denied*, 404 U.S. 946 (1971) and *Lyons v. United States*, 325 F.2d 370 (9th Cir. 1963), *cert. denied*, 377 U.S. 969 (1964). In the former, the Ninth Circuit stated that it had "uniformly held that an instruction which assumes, as its basis, an admitted or uncontroverted fact is proper and cannot be urged as error." *United States v. Terry, supra* at 582 (citing *Lyons v. United States supra*).

Despite this clear language, however, the authority of these cases may be subject to some debate. In *Terry* the trial court not only had instructed the jury that the defendant's testimonial admission had eliminated an issue, but had proceeded to remind the jury that it could disregard the testimony. The trial judge added no such immediate reminder in the instant case. *Lyons* is more obviously in point. While the court of appeals took note of the trial court's several instructions that the jurors were judges of credibility and evidentiary weight, it does not appear that these instructions were joined immediately with the instruction in question. In the case before us the trial judge gave standard instructions that the jurors were judges of fact, credibility and evidentiary weight, and the facts therefore appear to fall within the *Lyons* holding, even if that holding is narrowly construed. There is, in any event, no reason to doubt that the facts before us fall within the rule of a third case cited by the State, *United States v. Mancuso*, 423 F.2d 23 (5th Cir.), *cert. denied*, 400 U.S. 839 (1970), which held it proper to instruct that a fact was undisputed, when the defendant had admitted it on the stand.

Although the Supreme Court of the United States has not directly adopted the *Mancuso* holding or the rule as stated in *Terry*, it gave a potent indication that these views are correct when it observed in *Connecticut v. Johnson*, 460 U.S. 73 (1983), that "a *Sandstrom* error may be harmless if the defendant concedes the issue of intent." *Id.* at 87 (citations omitted). The Court, moreover, confirmed this implication in language apt to describe the case before us now, when it left "it to the lower courts to determine whether, by raising a particular defense or by his other actions, a defendant himself has taken [an issue] away from the jury." *Id.* Obviously no such inquiry would be legitimate if the National Constitution might require such a concession or theory of defense to be ignored. We therefore conclude that the trial judge's instruction did not violate the sixth and fourteenth amendments.

■ Nor did it violate the guarantee of a jury trial under article 15. When the defendant argues that the instruction was inconsistent with the jury's right to reject his admissions, he makes an untenable supposition. He assumes that there is no difference between an item of evidence that merely tends to prove an element of an offense, and an explicit, in-court, counselled admission of such an element, maintained by the defendant himself up to the moment the case goes to the jury. But there is a vast difference between the two. Ordinary evidence tends to prove a fact in contention, but the fact remains in contention and the jury may evaluate the evidence as it will; an admission of fact that is made in open court and never repudiated is reasonably understood to remove the fact from contention entirely. A jury instruction that ignored this difference would ignore the reality that our common language reflects, and would implicitly invite the jury to act irrationally. Such encouragement is not the object of article 15. Accordingly, we hold that the trial court could predicate its instruction on the defendant's explicit and unrepudiated courtroom admission of a relevant fact.

We should not end this discussion without a caveat, however. There is a quantum difference of constitutional significance between a fact admitted under the conditions present here and a fact merely uncontested. A trial court must always be sensitive to the difference, and be ready to ask whether a defendant's testimony falls on one side of the line or the other. If there is any doubt, the judge may not assume that the defendant has made an admission, for purposes of instructing the jury on such a predicate.

*Affirmed.*

BATCHELDER, J., with whom BROCK, J., joined, concurred in the result; the others concurred.

BATCHELDER, J., with whom BROCK, J., joins with respect to the jury instruction issues, concurring in the result: Under State law, the trial court erred in instructing the jury not to concern itself with the issue of penetration because the defendant had admitted penetration. This court compounds that error by holding that the trial court properly predicated its instruction on defendant's admission.

Sexual penetration is an element of the crime of aggravated felonious sexual assault, and the State must prove each element of the offense beyond a reasonable doubt. RSA 625:10. The defendant has a "right to have the jury determine whether the State met its burden of proof on all the elements required to support a conviction." *State v. Goodwin*, 118 N.H. 862, 869, 395 A.2d 1234, 1238 (1978); *see also State v. LeClair*, 118 N.H. 214, 221, 385 A.2d 831, 835 (1978). Under our State Constitution, fact-finding is the domain of the jury, not the judge. *See* N.H. CONST. pt. I, art. 15; *State v. Sands*, 123 N.H. 570, 618, 467 A.2d 202, 233 (1983) (Batchelder, J., dissenting). It is worth noting that in *United States v. Terry*, 446 F.2d 579 (9th Cir.), *cert. denied*, 404 U.S. 946 (1971), relied on by the court, the trial judge "reminded the jury that they were the sole and exclusive judges of the facts and that they had a right to disregard appellant's testimony if they so desired" immediately after commenting on the evidence. *Id.* at 582. In the present case, the trial court's comments were improper. New Hampshire courts should not indulge in the practice of commenting upon the evidence in the charge to the jury in criminal cases, *see generally*, R. MCNAMARA, 2 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 821 (1980), not even when the defendant has admitted facts.

However, I concur in the result today because I find that the trial court's error was harmless. In the context of a criminal case, error requires reversal unless it appears beyond a reasonable doubt that the error was harmless. *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976). In this case, in addition to the uncontroverted admission of penetration by the defendant, the victim's testimony and physical evidence indicated that there had been penetration.

I do not reach the issue dealing with the withdrawal of the plea bargain offer because I do not believe that it has been preserved.