Strafford
No. 91-165

HILLSIDE ASSOCIATES OF HOLLIS, INC. & a.

v.

MAINE BONDING & CASUALTY COMPANY

March 13, 1992

The plaintiffs, Hillside Associates of Hollis, Inc. and LandTree, Inc., filed no brief.

*Bouchard & Mallory P.A.*, of Manchester (*Kenneth G. Bouchard* on the brief and orally), for the plaintiff-intervenor, New Hampshire Insurance Company.

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*Stephen H. Roberts* on the brief and orally), for the plaintiff-intervenor, Raymond C. Brophy.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* and *Gilbert Upton* on the brief, and *Mr. Hilliard* orally), for the defendant, Maine Bonding & Casualty Company, and for the defendant-intervenor, Reuben N. Hodge Insurance Agency.

BROCK, C.J. The defendant, Maine Bonding & Casualty Company (Maine Bonding), and the defendant-intervenor, Reuben N. Hodge Insurance Agency (Hodge Insurance), appeal the decision of the Superior Court (*Temple*, J.) finding the plaintiffs, Hillside Asso-

ciates of Hollis, Inc. (Hillside) and LandTree, Inc. (LandTree), and plaintiff-intervenor, Raymond C. Brophy, entitled to coverage under an insurance policy allegedly issued by Maine Bonding. Brophy cross-appeals on the issue of attorney's fees. Based on our finding of mutual mistake, we reverse the trial court's order granting coverage and affirm its decision not to award attorney's fees.

The facts of this case are as follows. Brophy hired Hillside as a general contractor to oversee demolition, repair, and construction of a boathouse on Brophy's Tuftonboro property. Hillside and Land-Tree are related companies, and we will hereinafter refer to them collectively as "Hillside." At all times relevant to this case, Hodge Insurance served as Hillside's insurance agent. Its manager, William Lamper, took responsibility for procuring insurance coverage for Hillside and for Brophy, who wished to be named as an additional insured on all of Hillside's insurance policies pertaining to the construction project.

In early 1986, Hillside held an insurance policy with Aetna Casualty & Surety (Aetna) covering the Brophy job until February 4, 1986. Sometime before the expiration date, Hillside asked Lamper to extend coverage until March 31, 1986, in order to synchronize Hillside's insurance policies with its fiscal year. Lamper did as he was asked, and Aetna issued an insurance policy in the amount of $500,000, covering the period February 4, 1986, to March 31, 1986, with Brophy listed as an additional insured.

Aetna then told Lamper that it would not reinsure Hillside after March 31, 1986. Lamper conveyed this information to Hillside and said that, effective April 1, 1986, it would be covered by an insurance policy issued by Maine Bonding. One of the parties' pre-trial stipulations reads: "[Hillside] expected to have [its] companies insured to the extent of $500,000.00, on April 1, 1986, and the identity of the carrier providing that coverage did not matter . . . ."

On April 1, Aetna told Lamper that it would extend the Hillside policies until April 15 at no charge. The next day, Lamper wrote a certificate of insurance for Brophy, indicating that Maine Bonding had issued Hillside an insurance policy for the Brophy job in the amount of $500,000, effective March 31. On April 4, an employee of one of Hillside's contractors was severely injured while working on the boathouse. (The employee is not a party to this lawsuit.) Unaware of the accident, Lamper telephoned Brophy's office the same day and left a message that Hillside's insurance carrier had been changed to Maine Bonding, effective March 31, but that its insurance

coverages and limits would remain the same. That evening, Lamper learned of the calamity.

Brophy received Lamper's April 2 certificate on April 7. The parties have stipulated that "Brophy expected to have liability coverage in the amount of $500,000 effective April 1, 1986, and the identity of the carrier was not material." Three days later, on April 10, Lamper wrote two additional certificates for Brophy, indicating that Aetna covered Hillside from February 4, 1986, until April 15, 1986, and that Maine Bonding's coverage became effective on April 15, 1986. Also on April 10, Lamper formally requested Maine Bonding, through a written application, to insure Hillside for the Brophy construction job. Coverage was requested in the amount of $500,000, effective April 15, 1986, until April 15, 1987. Maine Bonding later approved the application as written.

Two years afterward, on June 22, 1988, Lamper produced the April 2, 1986 certificate and the two April 10, 1986 certificates at the request of the injured employee's attorney. Lamper explained that the April 2 certificate, listing Maine Bonding as the insurer as of March 31, 1986, "was done in error." Lamper died a few months later. One of his co-workers at Hodge Insurance, Rita Buker, testified at a deposition that she assumed Lamper acted as he did "[b]ecause he was human and he made a mistake." She also denounced Brophy's attorney's suggestion that Lamper tried to cancel coverage after the accident took place.

Hillside then instituted this declaratory judgment action, and the parties submitted their cases on the record, which consisted of several factual stipulations, exhibits, and depositions. The trial court rejected Maine Bonding's argument that Lamper made a mistake, stating: "The court finds no merit or credibility in defendant's contention that Lamper merely made an 'error' three times . . . ." Finding that Lamper possessed ample authority to bind Maine Bonding to an insurance contract, and that an oral contract was indeed consummated, the court ruled in favor of Hillside on the issue of coverage, but denied its request for attorney's fees. Aetna has conceded an obligation to provide coverage for the April 4, 1986 accident, and thus the lower court's order in effect entitles Hillside to $1,000,000 worth of coverage. The injured employee's lawsuit was settled for an amount greater than $500,000.

On appeal, Maine Bonding and Hodge Insurance first argue that RSA 491:22-a, placing the burden of proof on the insurance carrier in a declaratory judgment action, does not apply to this case, and that

therefore Brophy and New Hampshire Insurance Company (NH Insurance), plaintiff-intervenors in this case, must carry the burden of proof. (NH Insurance issued Brophy a homeowner's policy for the period relevant to this lawsuit; its liability apparently depends in part on our decision today.) Second, Maine Bonding and Hodge Insurance contend that no oral insurance contract was formed between the construction companies and Maine Bonding, and that the trial court in essence allowed a reformation of the written insurance contract. Third, Maine Bonding and Hodge Insurance maintain that even if an oral insurance contract does exist, it should be rescinded on the basis of either mutual mistake or unilateral mistake.

Brophy and NH Insurance disagree with each of Maine Bonding and Hodge Insurance's contentions, and, in addition, argue that Maine Bonding and Hodge Insurance failed to properly raise the issue of burden of proof either below or in their notice of appeal; NH Insurance makes the same argument with regard to the issues of mistake. Brophy also asserts that he is entitled to attorney's fees.

■ We will focus our discussion on the issue of mutual mistake, and base our decision on its resolution. Maine Bonding and Hodge Insurance have the burden of proof on this issue; even assuming they are correct in their contention that RSA 491:22-a does not apply here, they still bear the burden of proving their defense of mutual mistake. *See* 13 W. JAEGER, WILLISTON ON CONTRACTS § 1597, at 595 (3d ed. 1970) (person asserting mutual mistake bears the burden of proof). Because our decision on the issue of mutual mistake is dispositive of this case, we do not address the issues of contract formation, unilateral mistake, and attorney's fees.

Two preliminary issues, however, must be dealt with. First, NH Insurance contended in oral argument that the issue of mutual mistake is not properly before us. In support of this assertion, NH Insurance pointed to a paragraph in Hodge Insurance's pre-trial reply memorandum, stating that the issue of mutual mistake is a "straw man" which the other parties set up only to knock down. The memorandum does not delve into the doctrine of mutual mistake, or argue its application, but simply states: "There being no contract created by the certificate, there is nothing to rescind."

■ As NH Insurance observed, this paragraph is the only pre-trial treatment Hodge Insurance gave to the issue of mutual mistake. However, Hodge Insurance adequately argued the issue in its motion for reconsideration, and Maine Bonding asserted mutual mis-

take in its pre-trial memorandum. More importantly, the trial court acknowledged that mutual mistake was an issue before the court, and addressed it in its ruling. We therefore conclude that this issue was properly raised below. *Cf. State v. Stratton*, 132 N.H. 451, 456, 567 A.2d 986, 989 (1989) ("grounds of objection not brought to the attention of the trial court will not be considered for appellate relief").

NH Insurance also maintains that a question pertaining to mutual mistake was not set forth in Maine Bonding and Hodge Insurance's notice of appeal, and that therefore these parties are prohibited from arguing the issue before this court. *See* SUP. CT. R. 16(3)(b); *Dombrowski v. Dombrowski*, 131 N.H. 654, 663, 559 A.2d 828, 833 (1989) ("questions briefed must be set forth in the notice of appeal"). We disagree.

■ The question posed by Maine Bonding and Hodge Insurance in their notice of appeal reads: "Whether, under the stipulated facts and circumstances, the court below erred in determining that Maine Bonding was obligated to supply coverage to Hillside effective April 1, 1986?" Although this question is far from the model of specificity we would prefer to encounter, Supreme Court Rule 16(3)(b) provides that "[t]he statement of a question presented will be deemed to include every subsidiary question fairly comprised therein." Whether the trial court erred in finding no mutual mistake sufficient to warrant rescission is a question subsidiary to the one set forth in the notice of appeal. We therefore conclude that Maine Bonding and Hodge Insurance's notice of appeal meets the guideline articulated in Supreme Court Rule 16(3)(b).

■ Next, we ascertain the standard of review that should be used to evaluate the trial court's decision. Maine Bonding and Hodge Insurance argue that we should give less than ordinary deference to the trial court's factual findings, because the case below was submitted on the record. We agree. The trial judge never had an opportunity to scrutinize the demeanor of a witness. As all the documents from below are available for our perusal, the lower court was in no better position to decide the case than are we.

In *Allstate Ins. Co. v. Carr*, 119 N.H. 851, 854, 409 A.2d 782, 783–84 (1979), we agreed with the defendants' argument that "because the trial judge decided the case on the depositions and therefore could not have observed the demeanor and credibility of the witnesses, the standard of review should be broadened." Brophy argues

that the *Allstate* court did not base its decision on the words quoted above and that therefore we should ignore them. We disagree. Even if the statement is mere *dicta*, we respect the soundness of the principle articulated. The customary deference accorded to a trial court's findings must be slackened when the usual arguments no longer support it. *Cf. In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984) (reason for usual deference to lower court's findings is that lower court "is in the best position to observe the parties, evaluate the evidence, and assign credibility to the testimony").

We now turn to the central issue before us, that of mutual mistake. Section 152(1) of the Restatement (Second) of Contracts states that "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1981); *see also Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 147, 459 A.2d 231, 232 (1983) (adopting the Restatement position). "Mistake" is defined in section 151 as "a brief that is not in accord with the facts." "The belief need not be an articulated one." RESTATEMENT (SECOND) OF CONTRACTS, *supra,* § 151 comment a, at 383.

The main controversy among the parties seems to be whether Lamper actually made a mistake when he told Brophy and Hillside that Maine Bonding would be the insurer effective April 1, 1986, and wrote a certificate of insurance indicating the same. Maine Bonding and Hodge Insurance contend that it was a mistake, and that, if an oral insurance contract with Maine Bonding was formed, the mistake was shared by all involved. Brophy argues that Aetna's April 1, 1986 agreement to extend coverage until April 15 was merely an offer which Lamper failed to accept until he learned of the employee's injury. NH Insurance takes a different tack, arguing that Lamper bound both Aetna and Maine Bonding to the risk as of April 4, 1986, and then attempted to rescind the contract with Maine Bonding after he heard about the accident.

We believe the evidence supports a conclusion that Lamper simply made a mistake. To accept Brophy's and NH Insurance's arguments, we would have to assume that Lamper intentionally tried to do something illegal and morally reprehensible. Absolutely no evidence has been presented to back such a theory, and Lamper's co-worker directly contradicted this suggestion in her deposition testimony. Moreover, we have Lamper's own statement that the April 2, 1986

certificate, listing Maine Bonding as the carrier as of April 1, 1986, "was done in error."

■ Brophy and NH Insurance further contend that Lamper could not have been mistaken about the coverage dates because Lamper made his "mistake" not once, but three times. We refer back to the definition of mistake: "a belief that is not in accord with the facts." RESTATEMENT (SECOND) OF CONTRACTS § 151, at 383 (1981). A mistake is specifically described not as an act, but as a *belief*. From a mistaken belief, several "mistaken" acts can be generated.

Brophy and NH Insurance also argue that, even if Lamper was truly mistaken, Brophy and Hillside did not share in that mistake. Although both Brophy and Hillside asked for and expected to receive $500,000 worth of coverage, the contention is that their expectations were met and their request fulfilled when the alleged contract with Maine Bonding was created. In other words, Brophy and NH Insurance maintain that the existence of the Aetna contract is irrelevant to whether Brophy and Hillside made a mistake when they entered into the alleged Maine Bonding contract. We disagree.

Comment a to section 152 of the Restatement speaks precisely to this point. The comment explains that rescission is appropriate "where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis for the contract." *Id.* § 152 comment a, at 386. For example, rescission will be allowed when two parties form a life insurance contract, using another's life as a measure, and then later learn that the other person was dead at the time of contracting. *Id.* § 152 comment b, at 386–87.

The assumption upon which the contract is founded need not be stated. *Id.* § 151 comment a, at 383. In fact, the more basic the assumption, the less likely it is that the assumption will be articulated. Here, the basic, unstated assumption underlying the alleged contract with Maine Bonding was that Brophy and Hillside did not already have $500,000 worth of liability coverage on April 1, 1986. Because, unknown to Brophy and Hillside, Aetna was indeed providing the coverage requested, the "very basis for the [alleged] contract" with Maine Bonding was upset.

Finally, we note that the parties' mutual mistake "had a material effect on the agreed exchange of performances," as required by section 152(1) of the Restatement. Comment c to that section states that a party seeking rescission based on mutual mistake

"must show that the resulting imbalance in the agreed exchange is so severe that he can not fairly be required to carry it out. Ordinarily he will be able to do this by showing that the exchange is not only less desirable to him but is also more advantageous to the other party . . . [as where] the adversely affected party will give, and the other party will receive, something more than they supposed."

*Id.* § 152 comment c, at 388. There can be no debate on this point. Unless the alleged contract with Maine Bonding is rescinded, Maine Bonding will give, and Brophy and the construction companies will receive, $500,000 more in liability coverage than they supposed.

 We conclude that Maine Bonding and Hodge Insurance have met their burden of proving that a mutual mistake existed between the parties to the alleged oral insurance contract with Maine Bonding, and that any such contract should therefore be rescinded.

*Affirmed in part; reversed in part.*

All concurred.