Bolduc v. Beal Bank                    CV-97-570-JM  02/03/97  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Lionel R. Bolduc and
Maureen C. Bolduc

   v.                                          Civil No. 97-570-JM

Beal Bank, SSB


**O R D E R**


Plaintiffs Lionel and Maureen Bolduc brought suit to prevent foreclosure upon their home, owned by Maureen Bolduc, and a parcel of undeveloped land owned jointly by them.  According to the terms of a 1991 Forbearance Agreement, the home and land provide additional security through "blanket" second mortgages for two 1987 notes upon which plaintiffs had defaulted. Plaintiffs contend that the 1987 notes and 1991 Forbearance Agreement are invalid in whole or part.  Plaintiffs moved for a temporary restraining order (document no. 3).  At a hearing held on November 13, 1997, the parties agreed to postpone the foreclosure, and to treat the motion as a request for preliminary injunction.  The parties appeared on November 19, 1997, for a preliminary injunction hearing.  For the reasons stated below, plaintiff's motion (document no. 3) is granted.

## I. **Background**[1]

In 1987 Lionel Bolduc applied for two loans from BankEast. One loan, for $681,000.00, was to be secured by a number of commercial condominiums. The other loan, for $360,000.00, was to be secured by adjacent industrial land. A condition of the loans was that Lionel Bolduc pay off a debt owed to BankEast by Elarbee Development Corp., solely owned by Mr. Bolduc. Both the condominiums and land were jointly owned by Lionel and Maureen Bolduc. While Lionel Bolduc alone applied for the loans, he included in his financial statements assets jointly owned with his wife.

The commitment letter from BankEast, indicating acceptance of the loan application, was directed only to Lionel Bolduc. It neither required Maureen Bolduc to secure the loans with her property, nor did it require her to guarantee them personally. The notes themselves state that the loans be secured by the listed property owned by <u>Lionel</u> Bolduc. However, at the closing, BankEast required Maureen Bolduc to sign both the notes and the mortgage documents, thereby securing the notes with her share of the underlying assets, and also taking upon herself the obligations memorialized in the notes. The Bolducs were not

---

[1]The facts presented are taken from the verified complaint and other documents submitted by the parties.

represented by counsel. BankEast was represented by an attorney who had previously acted as the Bolducs' personal lawyer. Plaintiffs recall that BankEast's representative assured the Bolducs that Mrs. Bolduc's signatures were a normal requirement for the loans. Mrs. Bolduc signed the notes and mortgage documents.

By late 1990, the Bolducs were experiencing financial difficulties due to the downturn in the New Hampshire economy, and began discussing a workout plan with BankEast regarding the outstanding loans. On March 25, 1991, the Bolducs accepted a restructuring proposal from BankEast. Based upon that proposal, they executed a Loan Amendment, Collateralization and Security Agreement (the "Forbearance Agreement") on April 17, 1991.

Under the Forbearance Agreement, the Bolducs: (1) obtained forbearance on the 1987 notes; (2) accepted a $30,000.00 line of credit secured by a first mortgage on their home; (3) guaranteed a $200,000.00 loan for two years by BankEast to Ronald and Ruth Rivard in order to facilitate the Rivards' purchase of four of the Bolducs' condominiums; and (4) granted BankEast blanket second mortgages on their home, at 15 Cedar Street, Hudson, N.H., owned solely by Mrs. Bolduc, and on 90 acres of undeveloped land at "O" Old Blood Road, Merrimack, N.H., owned jointly by the Bolducs. The Forbearance Agreement purports to constitute the

3

entire agreement between the parties concerning the underlying debt, integrating into itself all related documents. The Bolducs, who were represented by counsel at that closing, believed that the blanket second mortgages only secured the Rivard guarantee; the Rivards never defaulted on their loan within the period of the guarantee. In fact, the blanket second mortgages secured the remaining balances on the two 1987 notes, as well as the $200,000.00 guarantee.

Later in 1991, BankEast was taken over by the Federal Deposit Insurance Corporation ("FDIC"), which also acquired the Bolduc notes and mortgages. The Bolducs defaulted on the 1987 notes. On June 5, 1995, the Bolducs advised the FDIC that they were willing to cooperate with the FDIC, but that they were prepared to assert affirmative defenses, based upon alleged violations of federal and state law by BankEast, to any direct action against the Bolducs by the FDIC or a successor-in-interest. In 1995, the FDIC foreclosed upon the condominium units and industrial land securing those notes. While the sale of the property foreclosed upon did not satisfy the underlying obligation, the FDIC made no attempt to foreclose upon either the Bolducs' home or the Merrimack land.

In December, 1995, the FDIC transferred the notes and blanket second mortgages to the Loan Acceptance Corporation (LAC)

4

of Dallas, Texas, which in turn transferred the mortgages and notes to Beal Bank.  LAC is a wholly owned subsidiary of Beal Bank.  Beal Bank then instituted foreclosure proceedings on the Bolducs' home and the Merrimack land on the basis of the blanket second mortgages, in order to collect on the notes.  Since the mortgages contain "statutory power of sale" provisions, Beal Bank could institute foreclosure proceedings without court intervention.  The Bolducs then instituted this action to halt the seizure of their home and the Merrimack land.

Plaintiffs offer a number of theories attacking the underlying obligations.  They allege that the 1987 notes are invalid as to Maureen Bolduc due to violations by BankEast of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq.(1994).  They also allege that the notes are invalid as to Maureen Bolduc because BankEast's attorney at the closing unduly influenced Maureen Bolduc, a long-time client of the attorney, to sign the notes and mortgages.  Furthermore, plaintiffs argue that the invalidity of the 1987 notes voids the Forbearance Agreement due to a failure of consideration.

They allege new ECOA violations and fraud in factum regarding the Forbearance Agreement as well, with similar results.  In addition, they contend that the Forbearance Agreement and blanket second mortgages are unenforceable due to

5

violations of the Bank Holding Company Act ("BHCA"), 12 U.S.C. §§ 1841-1850, §§ 1971-1978 (1994), the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq (1994 & Supp. 1995), and New Hampshire Rev. Stat. Ann. ("RSA") § 399-B (1983 & Supp. 1997) (Disclosure of Finance Charges).  They also argue that if only the blanket second mortgage is unenforceable, then enforcement of any claims under the Forbearance Agreement is barred by the relevant statute of limitations.  Finally, plaintiffs argue that Beal Bank is not a valid holder of the underlying instruments and, therefore, has no right to foreclose on the mortgages.

## II. Discussion

### A.  Subject Matter Jurisdiction

Plaintiffs assert federal question jurisdiction, pursuant to 28 U.S.C. § 1331 (1994), based upon alleged violations of ECOA, BHCA, and TILA.  Defendant contends as an initial matter that this court lacks subject matter jurisdiction over plaintiffs' action.  "Whenever it appears by a suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).  See also In re Rectical Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988).  Except to the extent discussed below, I conclude that the court has subject matter jurisdiction over this action.

6

Defendant argues that § 1821(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D)(1994), erects a jurisdictional bar to consideration of plaintiffs' claims, because plaintiffs failed to exhaust administrative remedies pursuant to FIRREA's administrative claims review process, 12 U.S.C. §§ 1821(d)(3)-(10)(1994).  Plaintiffs respond that they are asserting "affirmative defenses," which are not subject to FIRREA's administrative exhaustion requirements.  Defendant disputes plaintiffs' assertion that FIRREA does not bar affirmative defenses, and also disputes plaintiffs' characterization of their suit as one comprised of affirmative defenses.

FIRREA governs the filing, determination, and payment of claims made against a failed institution after the FDIC has been appointed receiver.  See Heno v. FDIC, 996 F.2d 429, 432 (1st Cir. 1993).  Anyone with a claim against a failed institution must submit an administrative claim to the FDIC within a prescribed period.  See 12 U.S.C. § 1821(d)(5)(C).  Participation in the administrative claims review process is mandatory for all parties asserting claims against the assets of failed institutions.  See Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992).  "The primary purpose underlying FIRREA's exhaustion scheme is to allow RTC [or FDIC] to perform its statutory

function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." Rosa v. RTC, 938 F.2d 383, 396 (3rd Cir.), cert. denied, 502 U.S. 981 (1991). Plaintiffs submitted no timely claims against BankEast to the FDIC.

"Failure to participate in the administrative claims process is a 'jurisdictional bar' to judicial review." Heno, 996 F.2d at 432. See 12 U.S.C. § 1821(d)(13)(D).[2] This means that where a claimant has been properly notified of the appointment of a federal insurer as receiver pursuant to 12 U.S.C. § 1821(d)(3)(B)-(C), and has nonetheless failed to initiate an administrative claim within the filing period as required by 12 U.S.C. § 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court. See Marquis, 965 F.2d at 1152.

Whether the Bolducs' suit is jurisdictionally barred by FIRREA § 1821(d)(13)(D) due to their failure to exhaust

---

[2]12 U.S.C. § 1821(d)(13)(D) provides in pertinent part:
(D) Limitation on judicial review
    Except as otherwise provided in this subsection, no court shall have jurisdiction over--
    (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver;  or
    (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

8

administrative remedies depends on the resolution of three issues: (1) whether FIRREA's administrative exhaustion requirement applies to affirmative defenses; (2) whether the Bolducs are, in fact, asserting affirmative defenses; and (3) whether the Bolducs' specific arguments may be raised as affirmative defenses, or only as claims for damages. In any event, the court does have subject matter jurisdiction over plaintiffs' invalid indorsement argument because FIRREA's administrative exhaustion requirement has no bearing upon it.[3]

**1. FIRREA does not bar "affirmative defenses."**

While the First Circuit has not ruled on the issue,[4] the

---

[3]There is diversity of citizenship between the parties (New Hampshire and Texas) and the amount in controversy (the value of the 1987 notes) exceeds $75,000.00. See 28 U.S.C. § 1332 (1994) (providing for diversity jurisdiction). See also Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 345 (1977)(measuring the amount in controversy by the value of the object of litigation). FIRREA is not implicated because the argument relates only to what Beal Bank acquired from LAC, and this question arose long after FDIC received the notes. The mere fact that the notes passed through the hands of the FDIC does not exempt them from normal requirements for the transfer of negotiable instruments. See FDIC v. Houde, 90 F.3d 600, 604 (1st Cir. 1996).

[4]See Simon v. FDIC, 48 F.3d 53, 57 n.1 (1st Cir. 1995)(declining to address whether declaratory judgment actions are subject to FIRREA § 1821(d)(13)(D)). Cf. Am. Casualty Co. v. Sentry FSB, No. 91-12050-WGY, 91-11016-WGY, 1995 WL 170037 (D.Mass. 1995)(affirmative defenses and debtors' actions for declaratory relief are not subject to the administrative exhaustion requirement), and FDIC v. Barnaby, 839 F.Supp. 935, 939 (D.Me. 1993)(all affirmative defenses are subject to FIRREA § 1821(d)(13)(D)).

9

majority view is that affirmative defenses need not be submitted to FIRREA's administrative claims review process in order to remain open to judicial review. Four Circuit Courts of Appeal have adopted the position that affirmative defenses are not subject to FIRREA's administrative exhaustion requirement, while no Circuit Court has held that all affirmative defenses must be administratively exhausted. See Nat'l Union Fire Ins. Co. v. City Sav., FSB, 28 F.3d 376, 393 (3rd Cir. 1994)(FIRREA § 1821(d)(13)(D) does not create a jurisdictional bar to defenses or affirmative defenses); RTC v. Midwest Fed. Sav. Bank, 4 F.3d 785, 793 (9th Cir. 1993)(affirmative defenses that could not have been the basis for an independent claim against the receiver or failed institution are not subject to the exhaustion requirement); see also Tristate Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996)(following Nat'l Union); RTC v. Love, 36 F.3d 972, 976-77 (10th Cir. 1994)(following Midwest Fed.). Since 1994, no state or district court has held that all unexhausted affirmative defenses are barred under FIRREA § 1821(d)(13)(D),[5] and at least eight courts not bound by the above-mentioned circuits have ruled that unexhausted affirmative defenses are not

_____

[5] The most recent decision to apply the administrative exhaustion requirement to all affirmative defenses is Conn. Bank & Trust Co. v. Brown, No. 097908, 1994 WL 271341, at *2 (Conn.Super., June 10, 1994)

10

barred by FIRREA.[6]

The rationale of the majority view is convincing. I conclude that FIRREA § 1821(d)(13)(D) does not erect a jurisdictional bar to consideration of unexhausted affirmative defenses.

### 2. Plaintiff's suit may be characterized as defensive.

Defendant challenges the Bolducs' characterization of their suit as asserting affirmative defenses, because the Bolducs are, in fact, plaintiffs in this matter. Defendant argues that the suit is an affirmative action seeking a declaratory judgment to determine rights among the parties, and that the action is therefore jurisdictionally barred by FIRREA § 1821(d)(13)(D). To support this assertion, defendant cites the holding in Nat'l Union, 28 F.3d at 385, that declaratory judgment actions are subject to FIRREA § 1821(d)(13)(D).

The facts in this case, however, are distinguishable from those in Nat'l Union. In Nat'l Union, the plaintiffs sought a

---

[6] See e.g. In re Washington Bancorporation, No. 7571, Civ.A. 95-1340, 1996 WL 148533, *6 (D.D.C. Mar. 19, 1996); FDIC v. Collins, 920 F. Supp. 30 (D.Conn., 1996); FDIC v. Martini, No. Civ. A HAR 94-1932, 1995 WL 168139, at *2 (D.Md. Apr 5, 1995); Am. Casualty Co. v. Sentry FSB, Nos. 91-12050-WGY, 91-11016-WGY, 1995 WL 170037 (D.Mass. March 16, 1995); Kasket v. Chase Manhattan Mortg. Corp., 695 So.2d 431, 433 (Fla.App. 1997); Danbury Sav. And Loan Ass'n, Inc. v. Scalzo, No. 301539, 1997 WL 139412, at *1 (Conn.Super. Mar. 13, 1997); Calaska Partners Ltd. V. Corson, 672 A.2d 1099 (Me. 1996).

declaratory judgment for rescission of an insurance contract with a failed savings bank, for which RTC had been appointed receiver. RTC made a claim under the policy, which plaintiffs did not honor. However, RTC never brought suit to enforce the contract. Instead, plaintiffs sought a preemptive judicial determination that the contract was void, without having complied with FIRREA's administrative exhaustion requirement. The court held that the plain language of FIRREA § 1821(d)(13)(D) barred plaintiffs' declaratory judgment action because the suit was an action seeking a determination of rights, and because the insurance contract was an asset of the failed institution. See id. at 384-385.

Here, despite the Bolducs' role as plaintiffs, their "claims" constitute affirmative defenses. Unlike the preemptive declaratory judgment action in Nat'l Union, the Bolducs' suit is entirely defensive, instituted in response to Beal Bank's exercise of its statutory right to foreclose without court intervention upon a "power of sale" mortgage. The Bolducs can only defend against foreclosure upon a power of sale mortgage by filing suit against Beal Bank.

Under New Hampshire law, power of sale mortgages permit mortgage foreclosure without any court proceedings.

> The words "statutory power of sale" shall be understood
> as giving the mortgagee and his executors,

12

> administrators, successors and assignees the right,
> upon default of any performance of . . . any condition
> contained in the mortgage, to foreclose by sale under
> the provisions of RSA 479:25-27-a inclusive.

RSA 477:29, III (1992). RSA 479:25 (1992) further provides that "[i]nstead of such suit and decree of sale, the mortgagee or his assignee may, upon breach of the condition, give such notices and do all such acts as are authorized or required by the power, including the giving of a foreclosure deed upon the completion of said foreclosure . . .." (emphasis added). In other words, exercising the statutory power of sale is equivalent to, and done instead of, bringing suit for a decree of sale.

When a mortgagee attempts to enforce a power of sale mortgage, a mortgagor may assert defenses against the foreclosure by "'petition[ing] the superior court . . . to enjoin the scheduled foreclosure sale.'" RSA 479:25, II. This is essentially what plaintiffs have done. However, instead of petitioning the relevant superior court they have petitioned the federal court, asserting defenses under federal statutes.

In other words, plaintiffs' suit is a reply to defendant's exercise of the statutory power of sale. The Bolducs, although procedurally plaintiffs, are in fact asserting defenses to the equivalent of a suit by defendant for a decree of sale. This court may, therefore, characterize the Bolducs' arguments as affirmative defenses, despite their unusual procedural posture.

13

See Fed. R. Civ. P. 8(c)("if justice so requires, [the court] shall treat the pleadings as if there had been a proper designation"), and 8(f)("all pleadings shall be so construed as to do substantial justice").

Assuming arguendo that the Bolducs' action may not be characterized as consisting of affirmative defenses, application of the jurisdictional bar in this case would constitute an unconstitutional denial of the Bolducs' due process rights, since they will have had neither reasonable notice of the administrative claims review process, nor an opportunity to have their assertion of rights adjudicated. For the administrative exhaustion requirement to comport with due process, a party with a claim against a failed institution should receive reasonable notice and an opportunity to be heard. See Nat'l Union, 28 F.3d at 392. Cf. Coit Indep. Joint Ventures v. FSLIC, 489 U.S. 561, 587 (1989)("[a]dministrative remedies that are inadequate need not be exhausted"). In the case of an action for determination of rights, due process does not require reasonable notice, so long as an opportunity exists to have the assertion of rights adjudicated. Nat'l Union, 28 F.3d at 391 ("because [plaintiffs] will have an opportunity to raise . . . affirmative defense[s]," barring the declaratory judgment action "would not present a due process violation.") If, however, a party were to be deprived of

property without receiving either reasonable notice of that risk or an opportunity to be heard, then "the broad jurisdictional bar . . . would appear to be unconstitutional" because it would effect a deprivation of property without due process of law, in violation of the Fifth Amendment. Id. at 392.

The Bolducs never received notice of the requirements of the administrative claims review process, or an opportunity to be heard. FIRREA's notice provisions require that creditors be notified that they must submit claims against the failed institution to the receiver before the bar date. See FIRREA § 1821(d)(3)(B) and (C).[7] There is no analogous notice requirement regarding debtors seeking a determination of rights. The Bolducs were debtors, not creditors, of BankEast and consequently were not notified that they should submit claims to the FDIC before the bar date. See id. at 395. As a result, the FDIC had no opportunity to adjudicate the Bolducs' current assertion of rights.[8] Therefore, if FIRREA § 1821(d)(13)(D) prohibits

---

[7]"[The receiver shall] promptly publish a notice to the depository institution's creditors to present their claims . . . to the receiver by the date specified in the notice . . .." 12 U.S.C. § 1821(d)(3)(B)(i).
"The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the same time of such publication to any creditor shown on the institutions books . . .." 12 U.S.C. § 1821(d)(3)(C).

[8]It is questionable whether the Bolducs could have submitted their assertion of rights to the FDIC before the bar date,

consideration of plaintiffs' current suit, then the Bolducs will have had no opportunity to have their assertion of rights heard. If the Bolducs are denied both reasonable notice and an opportunity to be heard, they are being denied the due process of law guaranteed to them under the Fifth Amendment.

Quite apart from the above analysis, whether FIRREA § 1821(d)(13)(D) even applies to declaratory judgment actions remains an open question within the First Circuit. See Simon, 48 F.3d at 57 n.1 (refraining from deciding whether FIRREA § 1821(d)(13)(D) applies to debtors' actions seeking declaratory judgment). One court within the circuit has recently held that debtors' actions for declaratory judgment are not subject to FIRREA's administrative exhaustion requirement. See Am. Casualty Co. v. Sentry FSB, No. 91-12050-WGY, 91-11016-WGY, 1995 WL 170037 at *4 (D.Mass. 1995). In Am. Casualty, the court relied primarily upon legislative history to determine that FIRREA's administrative exhaustion requirement and jurisdictional bar only apply to claims or actions by creditors, not debtors. See id.(citing H.R.REP. No. 54(I), 101st Cong., 1st Sess. 331 (1989), reprinted in 1989 U.S. CODE CONG. & ADMIN. NEWS 86, 127 ("[t]he

_____

irrespective of the notice requirement. See Nat'l Union, 28 F.3d at 395 ("it would be nearly impossible [for a party] to submit future hypothetical defenses to the administrative claims procedure . . ..")

16

bill establishes a claims procedure, with specific deadlines both for creditors and for the FDIC, to be followed in cases where the FDIC has been appointed receiver.")). Under Am. Casualty, the Bolducs' suit, as a debtors' action for declaratory judgment, would escape FIRREA's administrative exhaustion requirement, and would therefore not be jurisdictionally barred by FIRREA § 1821(d)(13)(D).

In sum, even assuming that plaintiffs' suit is not comprised of affirmative defenses, the action may nonetheless go forward. Applying the jurisdictional bar in this case would constitute a deprivation of the Bolducs' due process rights, in violation of the Fifth Amendment. In addition, the legislative history of FIRREA indicates that 12 U.S.C. § 1821(d)(13)(D) was never intended by Congress to apply to debtors actions for declaratory relief.

### 3. Only some of plaintiffs' arguments are affirmative defenses.

Defendant contends that some of plaintiffs' legal theories cannot be asserted as affirmative defenses at all, but instead must be raised as claims or counter-claims. If the plaintiffs' arguments may only be raised as claims or counterclaims, then defendant correctly argues that they fall prey to the exhaustion requirement.

17

### a. An ECOA violation may be raised as an affirmative defense.

An allegation of an ECOA violation can be raised as an affirmative defense against a creditor. See Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 31-33 (3rd Cir. 1995); Am. Sec. Midatlantic v. York, 1992 WL 237375 (D.D.C. Sept. 1, 1992); FDIC v. Notis, 602 A.2d 1164 (Me. 1992); In re Remington, 19 B.R. 718 (Bankr.D.Co. 1982). But see Riggs Nat. Bank of Washington, D.C. v. Linch, 829 F. Supp. 163 (E.D.Va. 1993); CMF Virginia Land, L.P. v. Brinson, 806 F. Supp. 90 (E.D.Va. 1992); United States v. Joseph Hirsch Sportswear Co. Inc., 1989 WL 20604 (E.D.N.Y. Feb. 28, 1989).

An ECOA violation may be asserted as a right of recoupment, which right may be asserted as an affirmative defense. See Silverman, 51 F.3d at 32, 33 n.1 (relying on ECOA's broad remedial provision which allows "'such equitable and declaratory relief as is necessary to enforce the requirement imposed under this subchapter.'")(quoting 15 U.S.C. § 1691e(c)). The

legislative history also supports interpreting ECOA as permitting the assertion of ECOA violations as affirmative defenses:

> Congress--in enacting the ECOA--intended that creditors not affirmatively benefit from proscribed acts of credit discrimination. To permit creditors--especially sophisticated credit institutions--to affirmatively benefit by disregarding the requirements of ECOA would seriously undermine the Congressional intent to eradicate gender and marital status based credit discrimination.

Id., at 33 (quotations omitted)(quoting Integra Bank v. Freeman, 839 F. Supp. 326, 329 (E.D.Pa. 1993)). Silverman, however, only permits an ECOA violation to be raised as an affirmative defense against a creditor. See id. at 33. Whether Beal Bank is a "creditor" of the Bolducs, as defined by the statute, is critical both to asserting the affirmative defense and to invoking this court's subject matter jurisdiction.

Under ECOA, the term creditor includes "a creditor's assignee, transferee or subrogee . . .. A [subsequent possessor of a credit instrument] is not a creditor . . . unless the person . . . knows or had reasonable notice of . . . the violation before becoming involved in the credit transaction . . .." 12 C.F.R. § 202.2(1)(1997). If a party in possession of a credit instrument is a holder in due course, then that party is not a "creditor," and may take the instrument free of ECOA defenses; however, a mere holder is a "creditor" and takes the instrument

19

subject to ECOA defenses.  See Silverman, 51 F.3d at 32.

Whether Beal Bank is a holder in due course, or merely a holder, is a question of state law, here New Hampshire law, because FIRREA does not address holder in due course status.  See O'Melveny & Myers v. FDIC, 512 U.S. 79, 85 (1994)(rendering matters left unaddressed in FIRREA controlled by state law); see also FDIC v. Houde, 90 F.3d 600, 604 (1st Cir. 1996)(the FDIC, when seeking to enforce a note, must be a holder of the note under state law).[9]

Under New Hampshire law, the holder of a negotiable instrument is "the person in possession [of the instrument] if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession."  RSA 382-A:1-201(20)(1994).  Defendant is a holder because it is in possession of the notes and has demonstrated that the notes are validly indorsed to it.  See RSA 382-A:3-204(a).[10]

---

[9]Dicta in Houde supports the growing consensus that O'Melveny does away with the federal "Holder in Due Course" doctrine, whereby the FDIC, as receiver, automatically received holder in due course status.

[10]Plaintiffs allege that the indorsements are invalid because they lack dates, they are contained in allonges, and that the allonges were attached to the notes.  However, RSA 382-A:3-204(a) does not require that an indorsement bear a date.  The section, and attached commentary, indicate that indorsement upon an allonge is valid.  Finally, plaintiffs' contention that the

On the other hand, RSA 382-A:3-302(a) defines a holder in due course as:

> the holder of an instrument if:
>     (1) the instrument . . . does not bear such apparent evidence . . . as to call into question its authenticity; and
>     (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured defect with respect to payment of another instrument issued as a part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a claim in recoupment described in Section 3-305(a).

Here, the notes had been dishonored, and defendant had ample notice to that effect. The FDIC had foreclosed upon some of the mortgages securing the 1987 notes. What FDIC transferred to LAC was merely the deficiency left after the foreclosures. Therefore, LAC was only a holder. LAC is a wholly owned subsidiary of Beal Bank, and LAC's knowledge may be imputed to Beal Bank. In addition, the June 5, 1995, letter from the Bolducs to the FDIC advising it of the ECOA and other defenses constitutes actual notice of the existence of a claim in recoupment. Therefore, Beal Bank is a holder, but not a holder

indorsement is not affixed to the instrument is mere speculation. Defendant has submitted an affidavit by Ray Fox, an officer of Beal Bank, to the effect that the paper is attached to the instrument, and plaintiffs offer no reason for the court to disbelieve Mr. Fox.

21

in due course.

As a holder, Beal Bank has the right to enforce the notes. See RSA 382-A:3-301. However, as a holder, Beal Bank is also a "creditor" and is subject to all the defenses available to plaintiffs, without the special protection of a holder in due course. See RSA 382-A:3-305(a) and (b). See also 12 C.F.R. § 202.2(1). Plaintiffs, therefore, may properly assert all the defenses raised in this action.

In sum, since Beal Bank is a holder, but not a holder in due course, Beal Bank is thus a creditor of the Bolducs, and subject to their ECOA affirmative defense.

### b. A BHCA violation may not be used as an affirmative defense.

An allegation of a violation of the BHCA may not be raised as an affirmative defense. BHCA enables an injured party to bring an action for treble damages to recover its losses due to an alleged violation. See 12 U.S.C. § 1972(1)(C). An obligation to pay back a loan that was made, however, is not an injury within the meaning of the statute. Therefore, invalidation of the loan agreement is not available as a remedy. See Exchange Nat. Bank v. Daniels, 768 F.2d 140, 144 (7th Cir. 1985); Pingel v. Conn. Nat'l Bank, 863 F. Supp. 80 (D.Conn. 1994). Since a party alleging a BHCA violation cannot seek invalidation of the agreement, then that party cannot allege the violation as an

22

affirmative defense, but only as a claim or counterclaim. As a claim or counterclaim, an allegation of a BHCA violation is subject to FIRREA § 1821(d)(13(D). Since plaintiffs did not raise this issue within the prescribed period, the court may not consider it.

### c. TILA and State law claims are not in dispute.

Defendant does not dispute that plaintiffs' TILA, fraud-in-factum, undue influence, invalid indorsement and RSA 399-B arguments may be asserted as affirmative defenses; therefore, I accept these arguments as affirmative defenses. See Fed. R. Civ. P. 8(c); see also Kasket v. Chase Manhattan Mortg. Corp., 695 So.2d 431 (Fla.App. 4 Dist., May 21, 1997)(allowing plaintiff to assert violation of TILA as affirmative defense).

### d. Conclusion

As demonstrated above, this court has subject matter jurisdiction over plaintiff's ECOA, TILA and state law claims, but not over plaintiffs' BHCA claim. Because this action is properly before the court, plaintiffs' motion for preliminary injunction may be considered.

**B. Motion for Preliminary Injunction**

**1. Standard of Review**

In determining whether to grant a preliminary injunction, the court considers four factors. The four factors are: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant; (3) a balancing of the relevant equities, i.e., the "hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld," Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and (4) the effect on the public interest of a grant or denial of the injunction. See Gately v. Mass., 2 F.3d 1221, 1224 (1st Cir. 1993)). Although each factor is significant, the sine qua non of the preliminary injunction standard is whether the movant is likely to succeed on the merits. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).

**2. Likelihood of Success on the Merits**

**a. ECOA**

Plaintiffs claim that BankEast violated ECOA in connection with the loan transactions of May 11, 1987, and April 17, 1991. Specifically, plaintiffs contend that BankEast violated ECOA by requiring Maureen Bolduc to sign the 1987 promissory notes. Plaintiffs also allege new violations of ECOA in connection with

24

the 1991 Forbearance Agreement, but do not support the allegation with any specific argument. Defendant replies that plaintiffs' ECOA allegations are barred by a two-year statute of limitations. It also argues that the plaintiffs' substantive arguments lack merit, because Lionel Bolduc was not independently creditworthy in 1987, and because BankEast had the right to require Maureen Bolduc's signature on the 1987 notes in order to create a valid lien on the mortgaged properties. Additionally, defendant argues that the 1991 Forbearance Agreement replaced the 1987 notes, that in 1991 Lionel and Maureen Bolduc were co-applicants for credit, and that due to his financial difficulties there is no doubt that Lionel Bolduc was not independently creditworthy in 1991.

Defendant contends that since the Bolducs' action commenced more than two years from the signing of either the 1987 notes or the 1991 Forbearance Agreement, the action is barred by ECOA's statute of limitations. See 15 U.S.C. § 1691e(f). However, ECOA's two-year statute of limitations for bringing a claim does not bar the assertion of an ECOA violation as a defense. See Silverman, 51 F.3d at 31. "'Claims by way of recoupment are 'never barred by the statute of limitations . . ..''" Silverman, 51 F.3d at 32 (quoting Integra, 839 F. Supp. at 330, and Bull v. U.S., 295 U.S. 247, 262 (1935)). The assertion of an ECOA violation as a defense is a defense of recoupment. See id.

25

Therefore, the Bolducs' affirmative defense of an ECOA violation, as a defense of recoupment, is not barred by the statute of limitations.

ECOA provides that it is unlawful "for any creditor to discriminate against any [credit] applicant with respect to any aspect of a credit transaction on the basis of . . . marital status."  15 U.S.C. § 1691(a)(1).  Regulation B of the regulations of the Board of Governors of the Federal Reserve, promulgated to implement ECOA, provides further that:

> [A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standard of creditworthiness for the amount due and terms of the credit requested.

12 C.F.R. § 202.7(d).

Plaintiffs have the initial burden of showing that BankEast regarded Lionel Bolduc as independently creditworthy.  See Ramsdell v. Bowles 64 F.3d 5, 9 (1st Cir. 1995).  To this end, plaintiffs allege that Lionel Bolduc, alone, applied for credit from BankEast in 1987.  Mr. Bolduc, through a corporation of which he was the sole shareholder, had previously been extended credit by BankEast.  BankEast's commitment letter confirming the extension of credit was addressed to Lionel Bolduc alone and made no reference at all to Maureen's assets, nor did it require her to guarantee the loans to her husband.  The promissory notes,

26

drafted by BankEast, only refer to the property of Lionel Bolduc as security for the loans.  Finally, plaintiffs allege that when the representative of BankEast, at the last minute, informed the Bolducs that Maureen must also sign the notes and mortgages, he assured her that this was a normal requirement for a loan.  To rebut these allegations, defendant observes that Mrs. Bolduc was deeply involved in her husband's business, an observation plaintiffs dispute.  Defendant also notes that many of Mr. Bolduc's assets were held jointly with his wife.  Despite defendant's representations, based upon the current record I find, as a preliminary matter, that BankEast regarded Lionel Bolduc as independently creditworthy in 1987.

Having established Lionel Bolduc's independent creditworthiness in 1987, the burden shifts to defendant to articulate some legitimate, non-discriminatory basis for its action.  See Farris v. Jefferson Bank, 194 B.R. 931, 937 (E.D.Pa. 1996).  Here, defendant contends that BankEast had every right to require Maureen Bolduc's signature on the 1987 notes, since she was a joint owner of the assets being offered as security for the loans, and her signature would have been required for BankEast to acquire a valid lien on the property.  In support of that

27

position, defendant points to 15 U.S.C. § 1691d(a), which provides that:

> A request for the signature of both parties to a marriage for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property, or assigning earnings, shall not constitute discrimination under this subchapter: *Provided, however*, that this provision shall not be construed to permit a creditor to take sex or marital status into account in connection with the evaluation of creditworthiness of any applicant.

Defendant's argument fails for two reasons. First, § 1691d(a) clearly does not alter BankEast's obligation to take only Lionel Bolduc's creditworthiness into account when reviewing just his application for credit. Second, Maureen Bolduc's signature on the notes was not necessary for BankEast to accomplish the permissible objectives of § 1691d(a). That section permitted BankEast to acquire an undisputed security interest in the assets supporting the notes, which required Maureen's signature on the mortgage documents, but not on the notes. The section did not permit BankEast to require Mrs. Bolduc to undertake her husband's obligations in full. Therefore, defendant has shown no legitimate, non-discriminatory, basis for BankEast's action.

Plaintiffs' assertion that BankEast violated the same ECOA provisions again in 1991 is much less persuasive. For one thing, plaintiffs do not support their allegation with any convincing

28

facts or argument. For another, in 1991 Mr. and Mrs. Bolduc were joint applicants for credit. Finally, in 1991 the Bolducs were in severe financial difficulties. The Bolducs were negotiating a workout agreement with BankEast precisely because they were unable to perform the terms of the 1987 notes. It is highly unlikely that under those circumstances BankEast would have found Lionel Bolduc independently creditworthy. Therefore, plaintiffs have not established a prima facie case for an ECOA violation in 1991, both because plaintiffs were joint applicants for credit and because plaintiffs have not shown that Lionel Bolduc was independently creditworthy.

BankEast's 1987 ECOA violation invalidates Maureen Bolduc's obligation under the 1987 notes. See Silverman, 51 F.3d at 32 ("Congress . . . intended that creditors not affirmatively benefit from proscribed acts of credit discrimination"). However, no ECOA violation took place in 1991. The determination of the case under an ECOA analysis, therefore, depends upon whether the invalidity of Maureen Bolduc's obligation under the 1987 notes voids the 1991 Forbearance Agreement.

### b. "Failure of Consideration"

Defendant asserts that the 1991 Forbearance Agreement, not the 1987 notes, are the primary source of the plaintiffs' obligation to defendant, because the 1991 document amended and

29

replaced the 1987 documents.  By this logic, whatever may have happened in 1987 is irrelevant to whether defendant may enforce the 1991 Forbearance Agreement.  Plaintiffs, in turn, contend that defendant's argument is incorrect because BankEast's 1987 ECOA violation invalidates the 1991 Forbearance Agreement due to what plaintiffs call a "failure of consideration," but which may be better called "mutual mistake."[11]

Mutual mistake renders a contract voidable.  See Hillside Assoc. v. Maine Bonding & Cas. Co., 135 N.H. 325, 331 (1992); Derouin v. Granite State Realty, Inc., 123 N.H. 145, 147 (1983).  It is well settled that:

> "[w]here a mistake of both parties at the time a
> contract was made as to a basic assumption on which the
> contract was made has a material effect on the agreed
> exchange of performances, the contract is voidable by
> the adversely affected party...."  Restatement (Second)
> of Contracts § 152(1)(1981);  see also Derouin v.
> Granite State Realty, Inc., 123 N.H. 145, 147, 459 A.2d
> 231, 232 (1983) (adopting the Restatement position).
> "Mistake" is defined in section 151 as "a belief that
> is not in accord with the facts."  "The belief need not
> be an articulated one."  Restatement (Second) of
> Contracts, supra, § 151 comment a, at 383.

Hillside Assoc., 135 N.H. at 331.  See also Calamari & Perillo,

---

[11]"Failure of consideration" is a somewhat misleading term since it generally refers not to a failure to form a contract, as one might suppose, but instead refers to a failure to perform on the contract.  See Calamari & Perillo, Contracts § 11-21 (3d ed. 1987).  Here, plaintiffs' point is that no contract was formed in 1991 due to a mutual misapprehension as to the 1987 agreement. Therefore, "mutual mistake" better characterizes the argument.

30

Contracts § 9-25 (3d ed. 1987).

Here, at the time of the 1991 Forbearance Agreement, both the Bolducs and BankEast mistakenly assumed that Maureen Bolduc was obligated to BankEast on the 1987 notes. In fact, Mrs. Bolduc had no obligation to BankEast, due to the latter's violation of the Bolducs' rights under ECOA.

The parties' mutual reliance upon this mistaken assumption clearly had a material effect on the resulting agreement. Had Mrs. Bolduc been aware of her true position regarding the 1987 notes, she would not have committed her home or share in the Merrimack property as security for the work-out deal in 1991. Similarly, Lionel Bolduc may not have risked his interest in the Merrimack property had he known his wife's true position. In short, the mistake induced the Bolducs to enter an agreement they would otherwise have refused. This mutual mistake renders the 1991 Forbearance Agreement void. See Hillside Assoc., 135 N.H. at 331; Calamari & Perillo, Contracts § 9-25 (3d ed. 1987).

Since the 1991 Forbearance Agreement is void, the blanket second mortgages are also void. The integration clause of the 1991 Forbearance Agreement provides that "[t]his agreement and all other Loan Documents executed herewith . . . includ[ing] the . . . Mortgages . . . represents the entire Agreement and understanding between the parties . . ." (defendant's exh. no. 2,

31

p. 11). Since the mortgages themselves constitute part of the agreement, they are void along with the rest of the agreement.

### c. Other arguments.

Since plaintiffs have demonstrated a likelihood of success on the merits of their ECOA and mutual mistake claims, the court need not consider plaintiffs' assertions of fraud in factum and undue influence, or their arguments under TILA, and RSA § 339-B.

### 2. Irreparable Harm to Movant

Irreparable harm to the movant would result from the sale of either property. See K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989)("Real estate has long been thought unique, and . . . [its loss is] likely to be found 'irreparable.'"); Shammas v. Merchants Nat'l Bank, 1990 WL 354452, at *5 (D.Mass. 1990)("sale [of real property] is almost always irreparable harm"). In this case, the house has been the Bolduc family home for many years and was intended by them to be the place of their retirement. In addition, foreclosure may render the Bolducs homeless. As to the Merrimack property, it is unique in that few parcels of undeveloped land of that size remain in the thickly settled and industrial area between Nashua and Manchester. In short, both properties are unique, and irreparable harm would result from the loss of either one.

32

### 3. Balance of Equities

Little harm would result to the defendant from the granting of a preliminary injunction, since it would merely delay the possible foreclosure sale of the properties until the resolution of the matter. There is some opportunity cost associated with this delay; however, that cost is modest alongside the considerable, as well as irreparable, harm that plaintiffs' would experience were the motion denied.

### 4. Public Interest

Congress enacted ECOA to proscribe discriminatory lending practices repugnant to public policy. See U.S. v. ITT Consumer Fin. Corp., 816 F.2d 487, 489 (9th Cir. 1987); Anderson v. United Fin. Co., 666 F.2d 1274, 1277 (9th Cir. 1987). Regulations enforcing ECOA protect the spouses of independently creditworthy credit applicants. See e.g. 12 C.F.R. § 202.7(d). When BankEast required Maureen Bolduc to sign the 1987 notes, it engaged in the sort of lending practice that Congress intended to proscribe. Accordingly, it is in the public interest to grant the requested preliminary injunction and, thereby, recognize the merits of plaintiffs' ECOA claim.

## III. Conclusion

For the reasons set forth above, plaintiffs' motion for a temporary restraining order (document no. 3), which parties agree

33

to construe as a motion for preliminary injunction, is granted. Preliminary injunction is allowed with the following conditions: (1) plaintiffs will keep their home, at 15 Cedar Street, Hudson, N.H., and the 90 acres at "O" Old Blood Road, Merrimack, N.H., in good repair, preventing any deterioration from the present state; and (2) they will not sell, transfer, or assign their interests in their home or the Merrimack property, or otherwise encumber those properties, without leave of this court.  See Fed. R. Civ. P. 65(c).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:  February 3, 1998

cc:  Michael C. McLaughlin, Esq.
     Jamie N. Hage, Esq.
     Peter D. Wenger, Esq.

34