Hillsborough-northern judicial district
No. 93-412

# THE STATE OF NEW HAMPSHIRE

### v.

# PAUL LITTLE

July 14, 1994

*Jeffrey R. Howard,* attorney general (*Joseph N. Laplante,* assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices,* of Concord (*Paul J. Twomey* on the brief and orally), for the defendant.

JOHNSON, J.   In his second appeal to this court, the defendant, Paul Little, seeks relief from a sentence imposed by the Superior Court (*Groff,* J.) following his pleas of guilty to one count of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1993), and six counts of felonious sexual assault, RSA 632-A:3 (1986). Little contends that the prosecutor failed to comply with a plea agreement and with this court's order after his prior appeal, to recommend a particular penalty at the sentencing hearing. He concedes that the prosecutor formally recited the terms of the agreed recommendation at the hearing, but maintains that the prosecutor's tactics and conduct substantially undermined the recommendation, thus breaching the plea agreement and violating the due process clauses of the State and Federal Constitutions. We affirm.

The State's prosecution began after Little visited the Hillsborough County Attorney's Office and confessed that he sexually assaulted a five-year-old boy at a religious retreat. Little eventually negotiated a plea bargain with the State, the essence of which was the State's promise to recommend a prison term of five to fifteen years with two and one-half years suspended upon successful completion of the sexual offender treatment program at the State Prison. The superior court rejected the plea bargain, however, before Little entered any guilty pleas. The parties do not now dispute that the prosecutor then promised that he would still make the recommendation contained in the plea bargain if Little pled guilty. Little pled guilty, but the prosecutor recommended, and the court imposed, consistent with the probation report, a seven-and-one-half to fifteen-year term of imprisonment.

Little then moved, on due process grounds, to withdraw his pleas as involuntary. The Superior Court (*Dalianis,* J.) denied the motion, finding that Little "knew . . . that the prosecutor was not bound to

make any recommendation although the prosecutor had said that he intended to recommend 2½ to 5 years." Little appealed, maintaining that the prosecutor breached their plea agreement. In an unpublished order, we reversed the superior court's ruling and remanded the case for resentencing. *State v. Little*, No. 92-384 (N.H. March 15, 1993). Citing *State v. O'Leary*, 128 N.H. 661, 665, 517 A.2d 1174, 1177 (1986), we also directed the prosecutor to "make the sentencing recommendation agreed to during negotiations for defendant's 'naked plea.'" *See generally Roy v. Perrin*, 122 N.H. 88, 93, 441 A.2d 1151, 1154 (1982); *State v. Goodrich*, 116 N.H. 477, 479, 363 A.2d 425, 426 (1976); J. BOND, PLEA BARGAINING & GUILTY PLEAS § 6.17(g), at 6-48 (2d ed. 1982); R. MCNAMARA, 2 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 757, at 163 (1991); Parodi, *The Roles of Participants in Negotiated Pleas*, 19 N.H.B.J. 321, 322, 331–32 (1978).

On remand, at Little's second sentencing hearing, the prosecutor formally recommended a prison term of five to fifteen years with two and one-half years suspended upon successful completion of the sexual offender treatment program. The prosecutor also presented a list of aggravating factors, as well as mitigators, and described Little's crimes as "very serious ones" deserving "very severe punishment." Little's attorney objected to the prosecutor's presentation, arguing that it constituted a breach of the parties' plea agreement and, thus, a violation of due process under the State and Federal Constitutions. The court denied Little's motion for "specific performance," finding the prosecutor's presentation "balanced" and neither "weak" nor "less than advocacy." After hearing statements from the victim's mother and Little's mother, and testimony from Little and a prison counselor, the superior court imposed a prison term of five to fifteen years, with no time suspended upon completion of any treatment program. As of the date of the hearing, Little had spent 777 days in the State Prison and had completed the prison sexual offender treatment program. Again, Little appealed, claiming a violation of his due process rights under the State and Federal Constitutions.

We base our decision on our interpretation of the due process clause of the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and use federal decisions only as occasional guides to our analysis, *see State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Finding no additional protections for Little in the Federal Constitution, we conduct no separate federal inquiry. *See id.*

In *State v. O'Leary*, this court described the effect of a prosecutor's breach of a plea bargain on a defendant's right to due process:

"When a defendant knowingly and intelligently enters a plea of guilty, he waives a series of constitutional guarantees including the privilege against compulsory self-incrimination and the rights to confront the witnesses against him and to obtain a trial by jury. If a defendant waives these federal and State rights and privileges in reliance upon a plea agreement, his waivers are conditioned upon the prosecutor's undertaking to honor the agreement. If the prosecutor thereafter repudiates it, the waivers cannot be enforced as knowing or voluntary. In order, therefore, to vindicate the constitutional guarantees that a defendant has mistakenly purported to waive, some remedy is required, whether it be withdrawal of the plea or enforcement of the agreement to make the recommendation. . . . [A] defendant who has performed his part of a plea agreement has a claim to relief, if not specific enforcement, because a prosecutor's failure to honor his side of the agreement invalidates the defendant's waiver of substantive constitutional rights."

128 N.H. at 665–66, 517 A.2d at 1177–78 (citations omitted). The United States Supreme Court has stated: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

To determine whether the prosecutor at Little's second sentencing hearing violated a plea agreement, we must consider whether there was an agreement and, if so, its specific terms as Little reasonably understood them. *Cf. United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990). The parties now agree that a plea agreement existed, the main feature of which called for the prosecutor to recommend a prison term of five to fifteen years with two and one-half years suspended upon successful completion of the prison treatment program.

The primary question in this appeal is whether the prosecutor's actions constituted a breach of the terms of the agreement. Little concedes that the prosecutor accurately informed the sentencing judge of the agreed-upon recommendation, but argues that the prosecutor's presentation of the case and cross-examination of witnesses undermined the recommendation and, thus, breached the agreement.

■ Whether the prosecutor failed to honor the bargain is a mixed question of law and fact. Although some federal courts see this solely as a question of law, *see, e.g., United States v. Canada*, 960

F.2d 263, 269 (1st Cir. 1992), we think that certain nonverbal aspects of a prosecutor's presentation, such as his or her demeanor and tone of voice, can only be assessed by the presiding sentencing judge as questions of fact, *cf. In re Adoption of Baby C.*, 125 N.H. 216, 225, 480 A.2d 101, 106 (1984). Words printed on the sterile pages of a transcript do not reveal whether a speaker's intonation turned "innocent" phrases into cutting remarks, or vice versa. Because the question of the prosecutor's performance depends on both her verbal and nonverbal presentation, we give deference to the superior court's finding that the prosecutor here did not breach the parties' agreement.

■ In reviewing the prosecutor's conduct, however, we bear in mind that "the most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining." *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973). Thus, "it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself," *Canada*, 960 F.2d at 270; moreover, a prosecutor's "overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse," *id.* at 269. With these standards in mind, we examine in detail the prosecutor's presentation and address each of Little's points of contention.

■ Before the sentencing hearing began, the prosecutor moved to prevent Little from introducing any evidence concerning events that took place since the original sentencing. As noted above, at the time of the second sentencing hearing, Little had already completed the sexual offender treatment program at the State Prison. Besides himself, Little's only witness was one of the treatment program counselors, who testified that Little had completed the program successfully. Although the sentencing judge denied the prosecutor's motion to exclude this evidence, Little argues that the very fact of the motion establishes a breach of the parties' plea agreement because this evidence could only have been used to support the intended recommendation. We disagree. First of all, to recommend a two-and-one-half-year sentence suspension upon successful completion of a treatment program, the prosecutor had no need to show that Little had already completed the program. Evidence of completion would simply show Little's eligibility for release in four and one-half more months if the sentencing judge decided to impose the recommended sentence. Second, the prosecutor's motion to exclude this evidence does not manifest a reluctance to present any mitigating factors. The

prosecutor indeed highlighted both mitigators apparent from Little's completion of the sexual offender treatment program — acceptance of responsibility and efforts to prevent recidivism — when she described Little's voluntary confession and his work in another treatment program. We conclude that the prosecutor's motion did not constitute a breach of the agreement.

■ Once the hearing began, the prosecutor accurately informed the judge of the terms of the negotiated recommendation. Little, however, argues in his brief that the prosecutor "left no doubt that it was making its recommendation because it was ordered to make its recommendation," citing her statement, "I'm here today to give that same recommendation as I've been — it's been indicated I should do." We find no prosecutorial error in this declaration. First, given the cryptic nature of the actual plea bargain and the tortuous route the case had already taken by the date of this hearing, we cannot fault the prosecutor for alluding to this court's order when explaining the basis of the recommendation. Moreover, as Judge Friendly wrote in *Bergman v. Lefkowitz*, 569 F.2d 705 (2d Cir. 1977): "In almost all cases where a prosecutor agrees in a plea bargain to make a sentence recommendation, he is recommending not what he wants but something less, which the agreement requires. This is the very essence of the bargain and the sentencing judge is well aware of it." *Id.* at 714.

In his brief, Little next argues that "[t]he prosecutor never stated to the Court that it felt that the recommendation was proper, but always indicated its support for the recommendation in the past tense. . . . At no point in time did the prosecutor indicate to the Court that there presently existed considerations that would support the imposition of the sentence negotiated." For example, when explaining why the State was recommending two and one-half years suspended upon successful completion of the treatment program, the prosecutor said, "[T]here *was* the thought that he was amenable for treatment." (Emphasis added.) In contrast, when describing Little's initial attempt to blame the victim for the crime, she said, "[W]e *consider* that an aggravating factor." (Emphasis added.)

■ We dismiss Little's argument that the use of the past tense when describing the mitigating factors constitutes evidence that the prosecutor breached the agreement. Although such a choice of verb tense could signal a lack of enthusiasm, the sentencing judge specifically found nothing "weak or less than advocacy" in the prosecutor's presentation. As the prosecutor's demeanor and tone of voice could

have easily rendered her verb tense distinctions meaningless, we defer to the judge's finding. Moreover, Little, in the case before us, had no right or reason to believe that he was entitled to an enthusiastic recommendation by the prosecutor as a result of his plea agreement. *Cf. United States v. Benchimol*, 471 U.S. 453, 455 (1985) (applying Federal Rule of Criminal Procedure 11(e)); *Hand*, 913 F.2d at 857; *Bergman*, 569 F.2d at 715–16. Consequently, it is enough that, after explaining the terms of the recommendation, the prosecutor presented the case fairly, injecting no material reservations about the agreement. *Cf. Benchimol*, 471 U.S. at 456; *Canada*, 960 F.2d at 270.

We also take issue with Little's implicit assumption that only mitigating factors could support the recommended sentence. The recommendation contemplated two and one-half years of incarceration — four and one-half months more than Little had already served. Such a term of imprisonment is a real punishment, and to recommend it the prosecutor had a duty to show the sentencing judge that Little deserved it. As Little's defense attorney pointed out at the hearing, the sentencing judge had the power to impose an entirely probationary sentence or a prison term of less than the recommended two and one-half years. *See* RSA 651:2, I (Supp. 1993). Thus, the aggravating factors were as necessary a part of the prosecutor's presentation in support of the recommendation as were the mitigating factors. *Cf. Hand*, 913 F.2d at 856 n.4. Moreover, we question whether a prosecutor could properly agree to withhold relevant information from a sentencing judge and thereby interfere with the judge's responsibility to impose a just sentence. *See id.* at 856–57.

At oral argument, Little also faulted the prosecutor for presenting mitigating factors that no longer truly existed at the time of the hearing. For example, the prosecutor stated that "it was beneficial to have a negotiated plea because it would be good to spare the child from having to go through a trial." Little points out that he had already pled guilty by the time the prosecutor made this statement and, thus, there was no longer any danger that the child would be put through the hardships of a trial. While this is true, we cannot understand how the prosecutor can be said to have breached the plea agreement merely by explaining why the plea agreement was reached in the first place.

■ Little next points to the prosecutor's description of Little's crimes as "very serious ones" deserving a "very severe punishment." Again, we find no prosecutorial error. First, as explained above, the recommendation the parties agreed on required the prosecutor to emphasize the seriousness of Little's actions to avoid the

chance of a completely probationary sentence or a prison sentence of less than two and one-half years. *Cf. Hand,* 913 F.2d at 856 n.4. Second, the prosecutor specifically described the recommended sentence as "a long period of time," "a significant sentence," and "a serious sentence." Thus, when the prosecutor argued for "a very severe punishment," she appears to have been arguing for the recommended sentence. We cannot say as a matter of law that she was arguing for something different. For similar reasons, we reject Little's argument that the prosecutor should not have informed the court of any aggravating factors. *Cf. id.* at 856–57 (plea agreement cannot properly restrict sentencing court's access to relevant information).

Little also maintains that the words the prosecutor used to present the mitigating factors served only to undercut the agreed-upon recommendation. For example, the prosecutor used the phrase, "I guess you would consider [these other considerations] mitigating factors." Viewing this phrase in context, however, and considering the unique vantage point of the sentencing judge, we find this statement to be legitimate advocacy. Little further cites the sentence, "But I guess the Court can view that how it may," as proof that the prosecutor failed to honor the agreement. The record, however, reveals something quite different. The prosecutor said:

> "And after [Little] was given his Miranda rights and told that he was free to leave and didn't have to answer questions but at that time indicated that he wanted to get the matters off of his chest and say what happened. [The victim's] mother tells me that she doesn't consider that a mitigating factor because he came with people from the religious retreat and her feeling was that he was basically kind of ordered to come in with them. *But I guess the Court can view that how it may.* I don't know of any other time in history when someone has come to the County Attorney's Office to report sexually abusing a child."

(Emphasis added.) This passage makes it clear that the sentence complained of was meant to detract from the victim's mother's unforgiving assessment of Little's actions.

Little next points to the prosecutor's statement that the victim "thought [Little] should get 18 and a half thousand years." This statement does not prove a breach of the parties' agreement, either alone or in combination with any other comment the prosecutor made. The prosecutor certainly could not have been understood to advocate the term suggested by the victim. In context, it appears the

prosecutor was merely relaying the victim's feelings as an aggravating factor.

Little also focuses on the prosecutor's cross-examinations as evidence she violated the parties' agreement. The prison counselor, for example, testified on direct examination that Little had few rehabilitation opportunities left at the prison because he had already completed the prison treatment program. She implied that further incarceration could actually chip away at the level of rehabilitation he had achieved through the program. During cross-examination, the prosecutor elicited testimony that Little still had some rehabilitative avenues open to him in the prison. We find nothing improper with this evidence. As noted above, at the time of the hearing, Little had been incarcerated for roughly two years and one and one-half months. The recommended sentence called for incarceration of two years and six months. In order to recommend such a sentence, the prosecutor had to negate the implication that Little would be better off out of prison than in it.

■ After the prison counselor testified, Little took the stand. In his brief, Little argues that "the [prosecutor's] cross examination [*sic*] was designed to provide the Court with reasons to exceed the negotiated recommendation." He asserts that she "elicited the admission from the defendant that he had not ask[ed] for help until after he had been caught" and "attempted to show that the defendant had been in some sense coerced into reporting his crime." Again, as explained above, the prosecutor's presentation of aggravating factors in no way violated the parties' agreement. Moreover, to the extent Little's direct examination was misleading or left out relevant information, we find nothing improper in the prosecutor's efforts to correct any resulting false impressions. *Cf. Hand*, 913 F.2d at 856 n.4. Little argues that the prosecutor's questioning implied that he should serve a sentence greater than that recommended, but this is unsupported by the record.

We have examined every aspect of the prosecutor's presentation complained of and find nothing warranting a conclusion that she failed to honor the parties' plea agreement. In addition, we have reviewed the record of the hearing as a whole, to determine whether any combination of the prosecutor's actions points to such a holding. We hold that Little's due process rights were not violated, affirm the superior court's denial of his motion for "specific performance" of the plea agreement, and affirm the sentence imposed.

*Affirmed.*

All concurred.