Cheshire
No. 95-733

THE STATE OF NEW HAMPSHIRE

v.

PAUL COMEAU, JR.

June 19, 1997

*Steven M. Houran*, acting attorney general (*John P. Kacavas*, assistant attorney general, on the brief), for the State.

*Paul Comeau, Jr., pro se*, filed no brief.

HORTON, J. This interlocutory transfer without ruling, *see* SUP. CT. R. 9, from the Superior Court (*Mangones*, J.) concerns 1994 amendments, *see* Laws 1994, ch. 224, to the statute governing petitions for annulment of criminal records. *See* RSA 651:5 (Supp. 1991) (the prior statute); RSA 651:5 (1996) (the new statute). Two questions have been transferred: (1) whether the plain language of the 1994 amendments demonstrates the legislature's intent to have the new statute apply to all petitions for annulment brought after January 1, 1995; and (2) whether application of the new statute to the petitions brought by the defendant would offend the prohibition against *ex post facto* laws of either part I, article 23 of the New Hampshire Constitution or article I, section 10 of the Federal Constitution. We hold that the new statute applies to petitions for annulment of felony convictions brought after January 1, 1995, and that application of the new statute to the defendant's petitions would not violate the *ex post facto* provisions of either the State or Federal Constitutions.

The defendant, Paul Comeau, Jr., was convicted and sentenced on May 29, 1991, for burglary, a class B felony, and theft by unauthorized taking, a class A felony. The defendant was under twenty-one years of age at the time he committed the offenses. The defendant's sentences included a term of imprisonment, from which he was released on July 8, 1991. The sentences in connection with both convictions were completed on July 27, 1994.

At the time of the defendant's offenses, as well as at the time of conviction and sentencing, the prior annulment statute provided in part:

> If a person under 21 years of age at the time of his criminal act is sentenced to imprisonment and in any 3-year period following his release has been convicted of no other offense except a traffic offense, he may, at any time after such 3-year period, apply to the court in which the original sentence was entered for an order to annul the record of conviction and sentence.

RSA 651:5, IV (Supp. 1991).

In May 1994, the legislature amended various provisions of the prior annulment statute by means of repeal and reenactment of RSA 651:5. *See* Laws 1994, ch. 224 (currently codified at RSA 651:5 (1996)). The new statute provides, in relevant part, that a person convicted of an offense may petition for annulment "when the petitioner has completed all the terms and conditions of the sentence and has thereafter been convicted of no other crime" for a period of five years for a class B felony, RSA 651:5, III(d) (1996), and ten years for a class A felony, RSA 651:5, III(e) (1996). Persons convicted of two offenses may not bring any petition until the *longer* time period has been satisfied. *See* RSA 651:5, VI(b) (1996).

In this case, the defendant filed petitions for annulment of his convictions and sentences on March 31, 1995. The State moved to dismiss the petitions, arguing that the new statute applied and rendered the petitions "premature." *See* RSA 651:5, III(d), (e) (1996). In response, the defendant urged the court "to apply RSA 651:5 prior to its amendment." The superior court suggested, and subsequently approved, this interlocutory transfer without ruling.

The initial transferred question essentially asks whether the new statute applies to the defendant's petitions as a matter of statutory interpretation. "Our task is to determine the legislature's intent as expressed in the language" of the new statute; we therefore begin "by examining the statute for its plain meaning." *Richmond v. White Mt. Recreation Assoc.*, 140 N.H. 755, 757, 674 A.2d 153, 154 (1996). When a statute's language is "plain and unambiguous, we need not look beyond the statute for further indications of legislative intent." *Appeal of Booker*, 139 N.H. 337, 341, 653 A.2d 1084, 1087 (1995) (quotation omitted).

Here, the legislature specifically stated that the new statute would "take effect January 1, 1995." Laws 1994, 224:4. The legisla-

ture further provided that "this act shall apply in the case of any petition for annulment *brought after the effective date of this act,* except that any person convicted of a misdemeanor before the effective date of this act shall have the option of applying for annulment under the laws in effect at the time of sentencing." Laws 1994, 224:2 (emphasis added). We hold that the quoted language plainly requires application of the new statute to petitions for annulment of felony convictions that were filed after January 1, 1995. Since the defendant filed the petitions to annul his felony convictions after the effective date of the new statute, it follows that the new statute applies to his petitions as a matter of statutory interpretation.

We turn next to the second transferred question: whether application of the new statute to the defendant's petitions would violate the *ex post facto* provisions of either the State or Federal Constitutions. We proceed on the assumption, uncritically accepted by the parties and the superior court, that RSA 651:5, IV (Supp. 1991) would both govern and authorize the defendant's petitions if the prior annulment statute applied to this case.

■ "The protection afforded against *ex post facto* penal laws under both article I, section 10 of the Federal Constitution and part I, article 23 of the New Hampshire Constitution is the same." *State v. Costello,* 138 N.H. 587, 589, 643 A.2d 531, 532 (1994). We therefore address this issue under the State Constitution and refer to federal decisions solely to aid our analysis. *Id.* We need not undertake a separate federal analysis.

■ The State Constitution provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." N.H. CONST. pt. I, art. 23. We have long recognized that this constitutional provision contains two distinct branches — civil and criminal. *See Rich v. Flanders,* 39 N.H. 304, 313 (1859) (Sargent, J.); *Woart v. Winnick,* 3 N.H. 473, 474 (1826); *see also State v. Reynolds,* 138 N.H. 519, 521, 642 A.2d 1368, 1370 (1994). The prohibition of *ex post facto* laws pertains only to legislation that imposes or increases *criminal punishment. See Opinion of the Justices,* 131 N.H. 573, 582, 558 A.2d 454, 459 (1989); *see also Opinion of the Justices (Furlough),* 135 N.H. 625, 638, 609 A.2d 1204, 1212 (1992). As the second transferred question only raises an *ex post facto* issue, we limit our analysis accordingly.

■ A statute or its application is considered an *ex post facto* law if it

> makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; or aggravates a crime, and makes it greater, than it was when committed; or changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed.

*Costello*, 138 N.H. at 589, 643 A.2d at 532 (quotations and ellipses omitted). Accordingly, changes in procedural law that do not inflict greater punishment are not *ex post facto*, even if the procedural changes operate to a defendant's disadvantage. *See Petition of Hamel*, 137 N.H. 488, 494-95, 629 A.2d 802, 806 (1993). Similarly, unfavorable changes in remedies or in statutes of limitations are not *ex post facto* unless the changes alter the elements of the offense, enhance the degree of punishment, or strip the defendant of an existing defense. *See State v. Hamel*, 138 N.H. 392, 395-96, 643 A.2d 953, 955-56 (1994). As these recent cases demonstrate, the appropriate focus in *ex post facto* analysis is *not* on whether a law imposes disadvantages or additional burdens, but rather on whether it "increase[s] the punishment for or alter[s] the elements of an offense, or change[s] the ultimate facts required to prove guilt." *Petition of Hamel*, 137 N.H. at 494, 629 A.2d at 806; *see Costello*, 138 N.H. at 589, 643 A.2d at 532-33; *Collins v. Youngblood*, 497 U.S. 37, 50, 52 (1990).

In this case, the new annulment statute in no way affects the elements of the defendant's underlying offenses, alters the ultimate facts necessary to prove the offenses, or strips the defendant of an existing defense to the offenses. The critical issue, therefore, is whether the new statute inflicts greater punishment on the defendant by extending the waiting period for filing petitions for annulment. We hold that it does not.

The new statute, like the prior statute and annulment statutes of other States, is essentially regulatory and remedial, rather than punitive. *See State v. Greenberg*, 564 So. 2d 1176, 1177 (Fla. Dist. Ct. App. 1990), *review denied*, 576 So. 2d 287 (Fla. 1991); *State v. T.P.M.*, 460 A.2d 167, 171 (N.J. Super. Ct. App. Div. 1983); *State v. Burke*, 818 P.2d 511, 514-15 (Or. Ct. App. 1991) (In Banc), *review denied*, 824 P.2d 418 (Or. 1992). Indeed, both the prior and the new statutes authorize annulment of criminal records if the sentencing court determines that annulment "will assist in the [defendant's] rehabilitation and will be consistent with the public welfare." RSA 651:5, I (1996); RSA 651:5, VII (Supp. 1991). Unlike *Reynolds*, 138 N.H. at 522, 642 A.2d at 1370, in which statutory changes concerning

petitions for sentence suspension "translate[d] into more time in prison," the

> availability of a procedure for [annulling] one's criminal record is unrelated to the length or nature of an individual's incarceration or constructive custody. It does not increase imprisonment, forestall parole or extend probation.

*Burke*, 818 P.2d at 514; *see also T.P.M.*, 460 A.2d at 171-72. We hold that application of the new statute to the defendant's petitions would not impose greater punishment and would not, therefore, offend the *ex post facto* prohibition of the State Constitution.

*Remanded.*

All concurred.