Sullivan
No. 96-232

THE STATE OF NEW HAMPSHIRE

v.

RICHARD R. BURR

June 19, 1997

*Steven M. Houran*, acting attorney general (*John P. Kacavas*, assistant attorney general, on the brief and orally), for the State.

*Michael C. Shklar* and *Donald L. Lader, Jr.*, of Newport (*Mr. Shklar* and *Mr. Lader* on the brief, and *Mr. Shklar* orally), for the defendant.

HORTON, J. The defendant, Richard R. Burr, petitioned the Superior Court (*Morrill*, J.) for annulment of his criminal record. Relying on 1994 amendments to the statute governing annulment petitions, the superior court denied the defendant's petition without prejudice. *See* Laws 1994, ch. 224 (currently codified at RSA 651:5 (1996)) (the new statute). On appeal, the defendant argues that the superior court erred in applying the new statute because the defendant relied on a prior version of the statute in agreeing to plead guilty in 1989. *See* RSA 651:5 (Supp. 1989) (the prior statute). We affirm.

The following facts are undisputed. In August 1989, the defendant pleaded guilty to theft by unauthorized taking, a class A felony. The defendant's guilty plea resulted from negotiations between his attorney and the prosecuting attorney. Consistent with the prosecutor's recommendations in the plea agreement, the superior court sentenced the defendant to ninety days of house arrest and probation for a period of five years beginning on September 15, 1989.

According to an "Agreed upon Statement of Facts" submitted to this court, "[a]t the time the parties negotiated the sentence, they clearly understood the impact of the sentence upon defendant's ability to have his record annulled." Furthermore, "at the time of the negotiations, the parties anticipated that defendant's eligibility for an annulment of his record would be governed by the then-existing" version of the annulment statute. *See* RSA 651:5 (Supp. 1989).

At the time of the defendant's conviction and sentencing in 1989, the prior annulment statute provided in part:

> If a person who has been sentenced to probation . . . has complied with the conditions of his sentence, he may, at any time after *one year* following [the] completion of the terms of his sentence, apply to the court in which the original sentence was entered for an order to annul the record of conviction and sentence.

RSA 651:5, I (Supp. 1989) (emphasis added). In May 1994, the legislature amended various provisions of the prior annulment statute by means of repeal and reenactment of RSA 651:5. *See* 1994 Laws, ch. 224 (currently codified at RSA 651:5 (1996)). The new statute provides, in relevant part, that a person convicted of a class A felony may petition for annulment "when the petitioner has completed all the terms and conditions of the sentence and has thereafter been convicted of no other crime" for a period of *ten years*. RSA 651:5, III(e) (1996). By its express terms, the new statute generally applies to "any petition for annulment brought after" January 1, 1995. Laws 1994, 224:2, :4; *see State v. Comeau*, 142 N.H. 84, 87, 697 A.2d 497, 499 (1997).

In this case, the defendant filed a petition for annulment of his class A felony conviction on January 8, 1996 — more than one year after completing his sentence of probation. *See* RSA 651:5, I (Supp. 1989). The State objected to the petition, arguing that it was "premature" pursuant to the new statute. *See* RSA 651:5, III(e) (1996). Following a hearing, the superior court denied the petition without prejudice and ruled that application of the new statute did not constitute an *ex post facto* law. This appeal followed.

■ The defendant's brief advances two distinct arguments in support of his contention that the prior annulment statute should apply to his petition: (1) his agreement to plead guilty constituted a contract with the State and incorporated the prior statute as a specific contractual term or condition; and (2) retrospective application of the new statute would deny him a vested right in violation of the State and Federal Constitutions. We note that the defendant's notice of appeal solely identified the following question for our review: "Whether a subsequent change in a statute can invalidate a negotiated plea agreement in which the defendant, in part, relied upon the statute as it was currently written in waiving his constitutional rights and entering a guilty plea." "Although this question is far from the model of specificity we would prefer to encounter" in a notice of appeal, *Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330, 605 A.2d 1026, 1029 (1992), we assume without deciding that the more specific issues addressed in the

defendant's brief constitute questions subsidiary to the general question set forth in the notice of appeal. *Cf.* SUP. CT. R. 16(3)(b); *Hillside Assocs.*, 135 N.H. at 330, 605 A.2d at 1029. We conclude, however, that the defendant's failure to devote anything more than passing reference in his brief to retrospective laws and vested rights under the Federal Constitution renders those federal claims waived. *See State v. Chick*, 141 N.H. 503, 504, 688 A.2d 553, 554 (1996). Our subsequent discussion of the defendant's vested rights argument is therefore limited to the State Constitution, and we cite decisions to the extent that they rely upon federal law only as an aid to our analysis. *See State v. MacLeod*, 141 N.H. 427, 428, 685 A.2d 473, 475 (1996).

The defendant's contract-based argument attempts to draw on the principle "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Our function, therefore, is to determine the specific terms of the plea agreement as the defendant "reasonably understood them." *State v. Little*, 138 N.H. 657, 660, 645 A.2d 665, 667 (1994).

■ Here, we hold that the defendant could not reasonably have understood the plea agreement to incorporate the prior annulment statute as a term or condition. The two-page plea agreement, signed by both the defendant and his attorney, is devoid of any references to the prior statute or to the annulment of criminal records generally. Moreover, the agreement expressly provides that

> [n]o promises have been made to me by any member of the Prosecut[o]r's Office or anyone else in an effort to have me enter this plea of GUILTY to the indictment, except as follows: House Arrest for 90 days; 5 Yrs. Probation; Restitution of $4,500.00.

Similarly, in a document notifying the superior court of the defendant's intention to enter a guilty plea, the defendant and his attorney never identified the prior statute or the annulment of criminal records generally. Instead, that document merely confirms that the defendant's guilty plea was based on his understanding of the prosecution's sentencing recommendations concerning house arrest, probation, and restitution.

Given the absence of any indication that the plea agreement resulted from prosecutorial promises or agreements relating to the defendant's ability to petition for annulment, we consider the

defendant's reliance on the parties' general understandings or expectations misplaced. Although the parties to the plea agreement "understood the impact of the sentence" on the defendant's ability to seek annulment and further "anticipated" that the defendant's petition for annulment would be governed by the prior statute, the understanding and anticipation never rose to the level of terms or conditions of the plea agreement. Rather, on the record before us, we conclude that they simply reflected the parties' awareness of then-existing law and the parties' expectation concerning that law's continued existence.

The defendant next argues that application of the new statute to his petition would contravene part I, article 23 of the State Constitution because his "right" to petition under the prior statute "vested" when the State "accepted his negotiated plea as his sentence." The State Constitution provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." N.H. CONST. pt. I, art. 23. As we this day explained, "this constitutional provision contains two distinct branches — civil and criminal." *Comeau*, 142 N.H. at 87, 497 A.2d at 500. While the term *"ex post facto"* relates solely to the criminal punishment branch, *see id.*, the phrase "vested rights" generally refers to the civil branch, *see Norton v. Patten*, 125 N.H. 413, 415, 480 A.2d 190, 191-92 (1984); *Estate of Kennett v. State*, 115 N.H. 50, 52-53, 333 A.2d 452, 454 (1975). *See generally Weaver v. Graham*, 450 U.S. 24, 29-30 & n.13 (1981).

The defendant's sole reliance on civil cases and his failure to brief an identifiable *ex post facto* argument lead us to construe his vested rights argument as implicating only the *civil* branch of part I, article 23 of our constitution. Indeed, the ability to petition for *sealing* of criminal records has been treated as a civil issue, despite its foundation in a criminal proceeding. *See People v. D.K.B.*, 843 P.2d 1326, 1329 n.2 (Colo. 1993) (en banc). In any event, to the extent that the defendant seeks to raise an *ex post facto* argument, our decision in *Comeau* would resolve that issue against him. *See Comeau*, 142 N.H. at 88, 497 A.2d at 500-01.

 The critical issue, therefore, is whether the defendant possessed a vested right in having the prior annulment statute apply to a petition which he filed *after* the effective date of the new statute. We hold that he did not.

It is well established law that the individual citizen, with all his rights to protection, has no vested interest in the

> existing laws of the State as precludes their amendment or repeal by the legislature; nor is there any implied obligation on the part of the State to protect its citizens against incidental injury occasioned by change in the law.

*Farnum's Petition*, 51 N.H. 376, 382 (1871) (quotation omitted); *see Town of Nottingham v. Bonser*, 131 N.H. 120, 134-35, 552 A.2d 58, 66 (1988) ("[c]itizens have no general right to the continuance even of prior substantive law"), *cert. denied*, 490 U.S. 1109 (1989). Accordingly, the mere existence of the prior statute at the time of the defendant's sentencing did not bestow on him a vested right in its provisions. As the Colorado Supreme Court concluded in rejecting a party's claim under a repealed statute governing the sealing of criminal records, the right to petition "does not exist in the sense of a vested right until it is exercised." *D.K.B.*, 843 P.2d at 1331.

Furthermore, retrospective statutes affecting remedies or procedural matters do not violate part I, article 23. *See, e.g., Norton*, 125 N.H. at 416, 480 A.2d at 192 (statute reducing the time for bringing an action does not violate State Constitution); *Willard v. Harvey*, 24 N.H. 344, 352 (1852) ("no party has a vested right to any particular remedy"). We have described the ability to petition for annulment as "a purely statutory *remedy*." *State v. Doe*, 117 N.H. 259, 261, 372 A.2d 279, 280 (1977) (emphasis added); *cf. D.K.B.*, 843 P.2d at 1331-32 (reasoning that the statutory process of petitioning for the sealing of criminal records was a "procedural claim for . . . a remedy," not a "vested substantive right").

Under these basic principles, the defendant had no vested right in having the prior statute apply to his petition for annulment. Accordingly, application of the new statute did not violate part I, article 23 of the State Constitution.

*Affirmed.*

All concurred.